Webb *v.* North Side Amusement Co., Appellant.

Argued October 2, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*L. Barton Ferguson,* for appellant.

*Franklin A. Ammon,* for appellee, was not heard.

PER CURIAM, November 25, 1929:

This is an appeal from a judgment affirming an award to petitioner, Lillian E. Webb, for the death of her husband, Earl C. Webb, who died as the result of injuries received in an automobile in which he was acting as chauffeur. The single question involved on this appeal is whether or not the decedent was killed in the course of his employment with the North Side Amusement Company, defendant. Webb had a dual employment; he was hired as a chauffeur by the amusement company, and as a private driver and houseman by its general manager, Nathan Friedberg. As chauffeur for the amusement company, "his duties consisted of 'extra aid,' and acting as chauffeur for the general manager, or for the manager, or going to and from the film exchange, and otherwise promoting the interests of his employer, ......for [which] services [to the company] he was paid $20 a week. For services [rendered privately to Friedberg] Webb received $5 a week, possibly $10." The motor car used in all the work was Friedberg's.

On July 25, 1928, Friedberg, the general manager, Amdur, the assistant manager, and another, were driven by Webb to New York City in the general manager's car,—a business trip made by the two managers for the purpose of inspecting talking motion pictures with a view to later installing them in the theatre which defendant company operated. When this inspection was completed on Friday, July 27th, the party drove to Atlantic City, at Amdur's suggestion, for,—according to defendant's version, which we may accept without discussion,—purely recreational purposes. Arriving there the same day, they remained until the following Sunday evening, when Friedberg, with Webb acting as chauffeur, began the homeward journey from Atlantic City

to Pittsburgh. En route both were killed. The record discloses that, very shortly before leaving Atlantic City, Friedberg directed Amdur to return to New York and close the motion picture deal.

Appellant's sole contention is summarized in his brief as follows: "The trip to Atlantic City constituted a deviation from defendant's business or employment. This operated as a suspension or abandonment of the deceased's employment with defendant. The deceased's relationship as employee of defendant was still under suspension at the time of his death, [so that] the deceased was not in the course of his employment with defendant corporation at [that] time." Appellant contends that the excursion to Atlantic City was not at an end when Webb and the general manager started homeward. In this connection it is to be noted, as pointed out in the opinion of the compensation board, that "even though Atlantic City is not on the shortest and most practicable route for a return trip [from] New York to Pittsburgh, it so happened that when the accident occurred he [Webb] was on the most-used and possibly the shortest motor car route between [those two points]." The homeward trip was a necessary part of the business excursion, and since there is nothing in the facts here presented indicating that the general manager, who was in charge of the trip, intended that the journey home be otherwise than the final step of the business expedition, we have been shown no reason which would require the finders of facts to interpret it as a continuation of the recreational deviation to Atlantic City.

The judgment is affirmed.