## MARYLAND CASUALTY CO. v. LEVINE.
### No. 6892.

Circuit Court of Appeals, Fifth Circuit.
Dec. 7, 1933.

Lee M. Sharrar and J. Newton Rayzor, both of Houston, Tex., for appellant.

Kenneth H. Aynesworth, Jr., and G. W. Staton, both of Houston, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

At about 11:45 o'clock on the morning of August 31, 1931, on Main street, in the city of Houston, while alighting from a public bus, Robert Levine, an employee of W. D. Haden & Co., was knocked down by a passing automobile and killed. As an employee of Haden & Co., Levine was covered, by the workmen's compensation policy that company had written with appellant, as to all injuries sustained by him "in the course of his employment"; that is, with certain exceptions named in the statute, not material here, as to "all injuries having to do with or originating in the work or business of his employer received by him when engaged in or about the furtherance of the affairs or business of the employer, whether on his premises or elsewhere." Article 8309, Rev. Stat. of Texas 1925.

Appellees, beneficiaries of deceased, brought this suit alleging that Levine was killed in the course of his employment, in that when killed he was on his way to the home of Mr. E. D. Haden, there to wash one of the company's cars. Appellant denied generally and specially pleaded that Levine came to his death, not in the course of his employment and in the furtherance of his employer's business, but while he was engaged in other matters; and, further, that the injuries did not have to do with or originate in the work or business of his employer, but were received by him while on the streets of the city of Houston, and while exposed to risks and hazards to which the public generally is exposed, wholly unrelated to and unconnected with his employment.

W. D. Haden & Co. is a family corporation, owned by W. D. Haden and his two sons. It is engaged in the handling of building material, shell, gravel, and sand. It has several places of business, one of them at Harrisburg, in the east end of Houston. E. D. Haden, secretary of the company, works at this plant, and has his home in Braeswood,

due south on Main street, roughly by way of public conveyance, eight or nine miles from the plant. It was necessary for the company to own and use automobiles in their business. They had quite a number of cars. Two of them, a Packard and a Chevrolet, were kept at Mr. E. D. Haden's home. After the company bought the Chevrolet, Mr. Haden had allowed Mrs. Haden to use the Packard as her personal car while he generally used the Chevrolet on company business, but it was testified to without dispute that her use was of course permissive only, and that both of these cars were actually kept for use and used in company business whenever needed, and particularly that in going from the Houston to the Corpus Christi plant Mr. Haden would sometimes use the Packard. These cars it was part of Levine's duties to the company to wash and grease, sometimes at the plant, but usually at Mr. Haden's home, as it was also a part of his company duties to clean and look after Mr. Haden's yacht, which was also used on company business. The company has always paid all the expenses of maintenance and upkeep of the Packard, as well as its oil and gas bills, just as it has paid them for the Chevrolet, and for all other company equipment.

Levine, a colored man, had worked regularly for Haden & Co. for some time at a salary of $25 a week, as general utility and handy man. In addition to his services for the company, which were of the most general nature, and comprehended whatever he was told by its officers to do for it, Levine expected to, and from time to time he did, when not engaged on the company's business, go to Mr. E. D. Haden's home and there perform domestic services in the house and on the place, under Mrs. Haden's direction, when told by Mr. Haden to do so. This service, unlike the service of washing the cars, and the other services the company paid him for, was recognized as personal to the Hadens, and for it he received gratuities in the way of small sums of money, old clothes, etc. He would not go out to the house to wash the cars unless Mr. Haden sent him, which was about once a week. While nothing was ever definitely said about it, he understood that at the house, in addition to washing the Packard car, he would do odd jobs for Mrs. Haden, if she requested it and he had spare time. In regard to his trips to the Haden home, no directions were given him as to the route, manner, or time of getting there; he was left to his own devices. On the day in question Levine arrived at the plant at about 7 o'clock to clean the office and wash the Chevrolet car

used by Mr. Haden in his trips to and from home. At about 9:30 Mr. Haden asked him if he had finished his work, and, being told that he had, directed him to go out to his home and wash the Packard car, and, when he got through with that, to go on to Galveston and clean up the yacht. In going from the plant to Mr. Haden's home, the ordinary and usual route by public conveyance was to take a bus east to the center of town, then transfer to another bus, which went as far south as the circle on Main street a little more than a mile from Mr. Haden's home. Levine stayed around the plant until 10 o'clock. He is next seen at 10:30 or 11 o'clock by his wife at Thompson's garage on San Felipe street, some distance west of Main street, the route to Mr. Haden's home, attending there to some matter regarding his own car which was in the garage. Picked up there by his wife and some relatives in a car, he declined her offer to drive him out to the Hadens about a mile west and four miles south, saying that he would rather take the bus. Taken to the bus station and left there at about 11:30, he was not seen until about 11:45, when, in getting off the bus at the end of its run, he was knocked down and killed by a passing car.

The defendant offered as an admission against Clara Levine an affidavit from her that Levine had told her that morning that "Mr. E. D. Haden had told him to go out to his house and polish the floors."

At the conclusion of the evidence, appellant asked the general charge. It is here assigning as error the refusal to give this and six other requested charges, asserting that no case was made out for a jury verdict, and that, if one was made out, the issues were, through failure to give the requested charges, incorrectly submitted.

■ There was no error in refusing the special charges. One of them, No. 4, was covered fully and correctly in the main charge. Four of them, Nos. 2, 3, 5, and 6, erroneously assumed that, if the purpose of having the car washed was to make it immediately fit for Mrs. Haden's social and personal use, and not for use in the business of the Haden Company, this would take Levine out of the employ of the Haden Company and make him a domestic servant of the Hadens. Such an instruction would be contrary to established law. The duty of a general utility man like Levine is performed when, under the instructions of his superior officer, he looks after company property. It is neither his duty nor his right to inquire into the use of that property which his superior officer intends to make. It is

enough if what he does in regard to it is, as this was here under the evidence, within the scope of his recognized and established duties to the company. Maryland Cas. Co. v. Kramer (C. C. A.) 62 F.(2d) 295; Commercial Cas. Ins. Co. v. Strawn (Tex. Civ. App.) 44 S.W. (2d) 805; Fidelity Union Cas. Co. v. Carey (Tex. Com. App.) 55 S.W.(2d) 795.

One of the charges, No. 7, erroneously sought to apply to this case the rule of non-liability for injuries sustained by the employee while going to and returning from his work in his own way and time. Guivarch v. Maryland Cas. Co. (C. C. A.) 37 F.(2d) 268; Central Surety & Ins. Corp. v. Howard (C. C. A.) 47 F.(2d) 1049. This case, one in which it was the duty of the employee to go from one job to another, comes within the exceptions noted in the Howard Case. It is ruled by Texas Employers' Ins. Ass'n v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524; Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S. W. 128; Burchfield v. Department of Labor, 165 Wash. 106, 4 P.(2d) 858, 859; Prairie Oil & Gas Co. v. McNellis, 146 Okl. 204, 293 P. 1026; Scrivner v. Franklin School Dist., 50 Idaho, 77, 293 P. 666; Kyle v. Greene High School, 208 Iowa, 1037, 226 N. W. 71; Marley v. Orval P. Johnson & Co., 215 Iowa, 151, 244 N. W. 833, 85 A. L. R. 969; Hilding v. Department of Labor and Industries, 162 Wash. 168, 298 P. 321. Under these authorities, if Levine had, without deviating from it on his own personal business, taken the usual direct route from the plant to the house [T. J. Moss Tie Co. v. Tanner (C. C. A.) 44 F.(2d) 928], he would, while so proceeding, have been within the course and scope of his employment. It is argued, however, that because he deviated by continuing west after he reached Main street, along which his proper course lay, in order to go into the San Felipe district on private business of his own, he broke the continuity of his employment, and, going beyond its scope, abandoned the protection of the compensatory coverage; that, having abandoned it, he did not return to its protection until he reached the place where he was to resume work; that on the way there he was merely one of the general public outside of his employment and the protection of its coverage.

This will not do. The jury found, upon ample supporting evidence, that Levine was, when killed, on the direct route to the place to which he had been sent on company business. Thus it stands established that, the deviation at an end, he had resumed his route and duty, and that the only reason for his being where he was when he was killed was the business of the company which, under direct injunctions from his employer, he was on his way to perform.

Universally applied as is the rule that coverage ceases during deviations from the course and scope of the employment, and injuries suffered during such deviation are not compensable, Inland Gas Corp. v. Frazier, 246 Ky. 432, 55 S.W.(2d) 26, 27; American Cas. Co. v. McDonald (Tenn. Sup.) 57 S.W. (2d) 795; Southern Cas. Co. v. Ehlers (Tex. Civ. App.) 14 S.W.(2d) 111; Hama Hama Logging Co. v. Dept. of Labor & Industries, 157 Wash. 96, 288 P. 655; Sullivan v. Industrial Comm., 79 Utah, 317, 10 P.(2d) 924, 925; Wynn v. Southern Surety Co. (Tex. Civ. App.) 26 S.W.(2d) 691; Lloyds Cas. Co. v. Rodriguez (Tex. Civ. App.) 36 S.W. (2d) 261; Travelers' Ins. Co. v. Santos (Tex. Civ. App.) 55 S.W.(2d) 868; Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192; Employers' Liability Assur. Corp. v. Industrial Accident Comm., 182 Cal. 612, 187 P. 42; Mountain v. Industrial Accident Comm., 92 Cal. App. 176, 267 P. 913; Industrial Comm. v. Lewis, 125 Ohio St. 296, 181 N. E. 136, it is with equal universality held that, the deviation over, all injuries thereafter received are compensable, State Compensation Ins. Fund v. Industrial Comm., 80 Colo. 130, 249 P. 653; Railway Express Agency v. Lewis, 156 Va. 800, 159 S. E. 188, 76 A. L. R. 350; Stratton v. Interstate Fruit Co., 47 S. D. 452, 199 N. W. 117; Webb v. North Side Amusement Co., 298 Pa. 58, 147 A. 846; Self v. Shirkie Coal Co., 89 Ind. App. 673, 166 N. E. 613; Federal Mutual Liability Ins. Co. v. Industrial Accident Comm., 94 Cal. App. 251, 270 P. 992; Southern Casualty Co. v. Ehlers (Tex. Civ. App.) 14 S.W. (2d) 111.

The cases cited, but a few of the many which have applied these postulates to varying states of fact, make it clear that the profound changes in public policy regarding the relation of master and servant, which underlie statutes for workmen's compensation,[1] require a construction of them at once liberal, reasonable, and logical. Reasonable and liberal enough to bring within their coverage all risks arising in connection with or out of work and the preparation for it which, ordered by the employer, the employee is endeavoring to do, reasonable and logical enough to exclude risks arising outside of the scope

---

[1] See the interesting dissenting opinion of Dausman, J., in Re Betts, 66 Ind. App. 484, 118 N. E. 551, 553.

of the employment as a result of an employee's personal deviation from his assigned duties, but too reasonable to give countenance to that form of casuistry which, tracing cause and consequence too nicely, would exclude from coverage not only injuries occurring during the personal deviations of the employee from his course or orbit, but those also occurring after his return to it. Of that liberal, reasonable, and logical construction of compensation statutes the courts of Texas, from which this case comes, are marked exponents. The District Judge followed their leading. He was right in sending the case to the jury.

The judgment is affirmed.