[Civil No. 3439. Filed July 2, 1934.]

[34 Pac. (2d) 404.]

R. J. HIGHT, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, HOWARD KEENER and L. C. HOLMES, as Members of Said Commission, and LeROY PATTEN, Respondents.

Messrs. Moeur & Moeur, for Petitioner.

Mr. Don C. Babbitt (Mr. Emil Wachtel, on the Brief), for Respondents.

McALISTER, J.—On April 26, 1933, LeRoy Patten was injured while discharging his duties as an employee of Dr. R. J. Hight, and soon afterwards made application to the Industrial Commission for compensation. Following a hearing the Commission made an award in his favor and the petitioner, Dr. Hight, against whom the award runs and who was not insured under the Compensation Law, has by *certiorari* brought the matter here for review.

It appears that at the time of the accident the petitioner was farming about 1,000 acres of land and owned around 400 head of cattle. The land was not in one body but in several separate ranches or farms, two of which were under the Salt River project and devoted solely to the growing of alfalfa, grain and other products. A third was also under

this project but used for maintaining a herd of thirty dairy cows. The fourth and only other ranch was at Queen Creek on the desert a few miles outside of the land irrigated from the Salt River and on it no crops were grown but a herd of about 250 head of cattle, some range and some dry dairy stock, were being kept. It was not owned by Dr. Hight but leased from another party and had on it a well, a trough, gasoline engine for pumping water for the cattle, and a fence inclosing six hundred acres. The cattle ran on the open range outside of this inclosure and came to the trough for water.

The claimant, LeRoy Patten, lived with his family in a small house on this place and "his sole and only duty was to take care of the cattle." Among his tasks were those of pumping water for them with a gasoline engine and seeing that they did not stray away from that range, but he did not cultivate any land or raise crops of any character. For this service he received $40 a month, the little house in which to live and milk from the cows for his family.

On April 26, 1933, while lassoing an animal his right hand was caught in the loop of the rope and before he could extricate it three fingers were so badly injured that they had to be amputated. After hearing the facts the Industrial Commission held he was entitled to compensation and made an award directing the employer, Dr. Hight, to pay him $101.27 for disability, $30 a month for a period of twenty-one months for partial permanent disability and whatever was necessary to take care of the medical, surgical and hospital expenses.

Upon a denial of his petition for a rehearing, Dr. Hight procured from this court a writ of *certiorari,* his application being based upon the ground that the Industrial Commission acted without jurisdiction in that the facts disclosed that the applicant was an agricultural worker not employed in the use of

machinery and did not, for this reason, come within the provisions of the Compensation Law; that such workers and those who employ them are by the provisions of section 1418, Revised Code of 1928, reading as follows, especially excepted therefrom:

"§ 1418. *Employers included; independent contractor.* The following employers shall be subject to the provisions of this article: The state, and each county, city, town, municipal corporation and school district therein; and every person who has in his service three or more workmen or operatives regularly employed in the same business, or establishment, under a contract of hire, except agricultural workers not employed in the use of machinery, and domestic servants; employers of such agricultural workers and domestic servants may, however, at their election come under the terms hereof by complying with its provisions and the rules and regulations of the commission. . . . "

It is clear from this section that it was the purpose of the legislature in enacting the Workmen's Compensation Law (Rev. Code 1928, § 1391 et seq.) to exclude from its terms those engaged in agricultural pursuits, except those employed in the use of machinery, and the probable reason for this was that in the opinion of the legislature workers therein, other than those falling within the exception, are not sufficiently subjected to injury by accident to justify this extra burden on the employer. Hence, to compel them to procure insurance covering injuries that occur so infrequently, notwithstanding the lower rate of premium required for this protection, places upon that industry, the legislature must have felt, a burden incommensurate with the benefit received. However, agricultural employers are not prohibited from taking advantage of the provisions of the law, if they desire to do so, but are left entirely to act as their judgment dictates. If they feel their interests will

be best subserved by bringing themselves within its terms they have the privilege of doing so.

The situation is different when agricultural workers are required to use machinery in their work, however; in that instance they are entitled to the same protection the Compensation Law gives to those engaged in other lines of endeavor. Hence, one who employs three or more agricultural workers to perform services requiring the use of machinery comes within the provisions of the law, and if he does not comply with its terms by paying the necessary premium the responsibility for any injury his employee may suffer accidentally while working is his and it would be the duty of the Industrial Commission to make an award requiring him to pay it, whereupon his obligation to do so is just as binding as the payment of a judgment of a court of record would be.

But if one is employed as a general agricultural worker, that is, to do the tasks one hired as an agricultural or farm-hand is called upon to perform, and in the discharge of these duties it becomes necessary for him at times to use machinery and at others not to use it, he is entitled in the former but not in the latter instance to the protection the Compensation Law gives. This, of course, is true only when there are three or more employed in the use of machinery in the same business. Hence, if one, or even two, should be engaged in work of this character, and a third should be irrigating or doing work not necessitating the use of machinery, any injury resulting to either or both of the two former from an accident occurring while they were so employed would not, it seems clear, be compensable under the statutes, since there would not then be as many as three engaged in the phase of the work the Compensation Law covers.

In view of these considerations it is claimed by petitioner that the applicant does not come within the provision giving compensation to agricultural

workers employed in the use of machinery, and in this we think he is correct, that is, if the contention that he should be properly classed as a worker in agriculture is correct. While it was a part of his task to pump water for the cattle by running a gasoline engine, yet the accident which caused his injury did not occur while he was doing this, and such being the case, he has not brought himself within the provisions of the law protecting agricultural workers employed in the use of machinery. By no process of reasoning can a rope used for lassoing an animal be regarded or treated as machinery within the meaning of this term as used in the Workmen's Compensation Law, and since this is true it is immaterial how many of the other agricultural workers of Dr. Hight were employed in the use of machinery.

The foregoing conclusion is necessarily predicated upon the theory that one employed to look after and care for cattle is an agricultural worker, and in consequence of this comes within the meaning of this term as used in the Workmen's Compensation Law of this state, and there can be no question but that under the great weight of authority this is true. Webster defines agriculture as:

"The art or science of cultivating the ground, including harvesting of crops and rearing and management of live stock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man. . . . "

The Modern Encyclopedia gives it this meaning:

"Art of cultivating the ground in order to make grain and other crops for man and beast; including the art of preparing the soil, sowing and planting seeds, removing the crops, and also the raising and feeding of cattle or other live stock. . . . "

In the Oxford English Dictionary appears the following definition of the term:

"The science and art of cultivating the soil; including the allied pursuits of gathering in the crops and rearing live stock; tillage, husbandry, farming (in the widest sense)."

After giving several definitions of the term, "agriculture," showing that it includes the rearing of livestock as well as the growing of crops, the Supreme Court of Utah in *Davis* v. *Industrial Com.*, 59 Utah 607, 206 Pac. 267, 268, held that one Davis, who was injured while herding sheep for his employer on the public domain, was an agricultural laborer, and, therefore, not within the protection of the Workmen's Compensation Law of that state. The section of that law which exempts such laborers, 3110, is the same in meaning as section 1418, *supra*. In reaching its conclusion the court used the following language which we think applicable and very persuasive in this case:

"Every standard authority that defines the word 'agriculture' includes in the definition the rearing and care of live stock.

"Doubtless the Legislature used the words 'agricultural laborers' in their plain, usual and commonly accepted sense and as defined by lexicographers. There is no reason for believing that it was intended that the words should be given the most narrow definition of which they are susceptible We can see no good reason for saying that the Legislature intended that those who do strictly farm work should be classed as agricultural laborers, while those who work with and care for live stock should be excluded, where the work is not actually done upon the employer's farm. Practically all of the sheep and cattle men of this state are also engaged in farming or ranching. As stated in the brief of counsel for defendants, it is a matter of common knowledge that in this state it is practically impossible for a stock raiser successfully to run his stock, whether it be sheep or cattle, without a farm or ranch in connection therewith. Farming, in the technical sense of the

word, is so intimately associated with the stock industry in Utah that it is practically impossible to separate the two. There are very few men who are engaged exclusively in stock raising as apart from farming, and very few farmers who are engaged exclusively in farming, as apart from stock raising. . . .

"We must presume that the Legislature knew of this condition, and for this reason the Legislature must have contemplated that sheep herders and cattle herders would be excluded from the State Industrial Act."

The fact that the applicant was caring for the cattle on the open range a few miles off the cultivated land under the Salt River project did not make him any the less an agricultural worker than he would have been had he been looking after it on an irrigated farm. His business was still caring for the cattle, that is, seeing that they had food and water, were not driven off or stolen, did not stray away and in case of illness or injury that they had such help as he could give them. This idea was expressed in *Davis* v. *Industrial Com., supra,* in the following language:

"The applicant for compensation herded sheep for his employer on the public domain. If he was an agricultural laborer when herding on the owner's ranch, the fact that the sheep were herded elsewhere would not remove him from this class of labor. If raising stock on a small farm is agriculture, raising stock on a large ranch is the same; and if raising and caring for sheep on the owner's premises is agriculture, the laborer's avocation is not changed by the sheep being pastured and herded elsewhere, whether on the public domain or not."

In a comparatively recent decision, *Gordon* v. *Buster,* 113 Tex. 382, 257 S. W. 220, 221, the Supreme Court of Texas held that in view of the general scope of the term, "farm," which means a tract of land

used for the raising of crops or the rearing of animals, the terms, "farm laborers" and "ranch laborers," are synonymous and, therefore, the Workmen's Compensation Law of that state, which deprives an employer of the defense of contributory negligence and assumed risk in actions to recover damages for personal injuries sustained by employees, except domestic servants and farm laborers, must· be deemed to have intended to include within the latter term "ranch laborers." The court said:

"Upon a careful survey of the subject, we hold. the view that ranch laborers are included in the general term 'farm laborers,' as used in the statute, and that, as such, are exempted from the operation of the Workmen's Compensation Act as it stood before its amendment by the Thirty-Seventh Legislature. . . .

"The noun 'farm' in this country prominently means a tract of land chiefly under cultivation. While it is in this sense that the word is most frequently used, yet, as we have seen in its general scope and significance it means any tract of land used for the production of crops or the rearing of animals. The expressions 'stock farmer' and 'stock farming' embody the idea that one is largely, if not wholly, engaged in the rearing of live stock, such as horses, cattle, sheep, hogs, etc."

See, also, *Coleman* v. *Bartholomew,* 175 App. Div. 122, 161 N. Y. Supp. 560; *In re Keaney,* 217 Mass. 5, 104 N. E. 438; *Beyer* v. *Decker,* 159 Md. 289, 150 Atl. 804; *Greischar* v. *St. Mary's College,* 176 Minn. 100, 222 N. W. 525, 526.

In the last of these cases the Supreme Court of Minnesota in discussing the status of a dairy farm laborer under the Workmen's Compensation Act said:

"No distinction can at this day be made in this state between the status of a laborer on a dairy farm and one on a grain farm, so far as the protection of the Workmen's Compensation Act applies. To milk

cows and care for the barns on a dairy farm, or plowing its fields, must be considered the work of a farm laborer, just the same as would be the same work upon any other sort of a farm.''

We are in full accord with the suggestion of the applicant that inasmuch as the Workmen's Compensation Law was enacted to provide compensation for those injured in industry it should be liberally construed to accomplish this purpose; but in applying. this rule it must not be forgotten that this law excepts from its provisions certain employees and that the court has no alternative other than to give effect to the exception as well as to the other provisions of the act. To construe the term, ''agricultural laborers,'' to mean what the applicant contends it does, would, however, nullify this exception, because the result of doing so would be to place those excepted from the provisions of the act upon the same basis as those included in them, and this, notwithstanding the fact that in the light of the authorities the language stating who are excepted is so clear and unmistakable that there can be no question but that the applicant is among them.

We are of the view that the applicant, LeRoy Patten, was at the time of his injury an agricultural worker not in the use of machinery and, therefore, that he did not come within the class the Workmen's Compensation Law covers.

The award is set aside.

ROSS, C. J., and LOCKWOOD, J., concur.