30 N.J. Super. 525 (1954)
105 A.2d 437
BELIA WHITE, ADMINISTRATRIX OF THE ESTATE OF WALTER WHITE, PETITIONER-RESPONDENT,
v.
FRANK Z. SINDLINGER, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1954.
Decided May 17, 1954.
Before Judges CLAPP, FREUND and SCHETTINO.
*526 Mr. Robert V. Carton argued the cause for petitioner-respondent (Messrs. Durand, Ivins and Carton, attorneys).
Mr. Isidor Kalisch argued the cause for respondent-appellant (Messrs. Kalisch & Kalisch, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This appeal is taken by the employer from a County Court's judgment affirming the findings of the Workmen's Compensation Division, State Department of Labor. The County Court found in favor of petitioner, a widow, and her three children, the dependents of Walter White, an employee of appellant, that on April 5, 1952 the employee sustained personal injuries in an accident and died as a result thereof, and that the accident and death arose out of and during the course of decedent's employment with appellant.
The appellant's position is that although decedent had not deviated geographically from the service to his employer, he had deviated in point of time and had so deviated exclusively for his own purposes in no way associated with the interests of his employer, and that as a result of such conduct additional hazards were created which took him out of the orbit of his employment. Because of the pinpoint argument of appellant it is essential that the facts be set forth in detail as to place and time.
The decedent was employed by appellant as a crane operator. The employer gave decedent a pickup truck for the purpose of transporting the decedent and other employees of appellant to and from work, admittedly for the convenience of the employer. The employer had the decedent garage the pickup truck at decedent's home. One of the employees taken by the decedent to and from work was decedent's assistant, Mayer.
On April 5, 1952 decedent and Mayer had been working on a crane at Cedarcroft on the Metedeconk River in the Laurelton area of Ocean County. Decedent and Mayer drove in the pickup truck from Cedarcroft shortly after quitting time *527 at 4:30 P.M. to the employer's shop at Shore Acres, about six miles from the crane. Several minutes after leaving the crane the employees stopped, bought two quarts of beer and consumed them when they arrived at the shop shortly before 5:00 P.M.
They were at the shop for 20 to 30 minutes and while there, Mayer filled oil cans while decedent put some kind of tool in the truck for use next day. They then drove to Lakewood, eight miles away, where Mayer lived. They stopped at an inn on the way and decedent bought two more quarts of beer which were consumed when they parked further along the road. It was at this point that a Mr. Best, formerly in appellant's employ, stopped and talked about the operation of the crane he had formerly operated for the appellant. The conversation lasted 30 to 45 minutes. Decedent arranged to meet Best in Lakewood to buy him a beer. The three met at a bar there and had two beers. They stayed 30 to 45 minutes and then Mayer left on foot for his home close by while decedent left in the truck for home along the customary route. Some time later decedent was found dead in the overturned pickup truck on the Old Marl Road, leading to decedent's home in Allenwood.
Mayer was indefinite as to time they left for home but did testify that he thought it was after 7 P.M. when he got home and said "it was pretty late." We emphasize his final statement that it was not dark when he left Marlboro Inn, and the record shows that sunset on April 5, 1952 was at 6:27 P.M.
Feiner, a poultry farmer at the corner of Old Marl Road and Allenwood Road, testified that his custom was to feed his chickens in the late afternoon  later on a sunny day and earlier on a cloudy day so as to escape the dark. He was in the last of his four coops, and it was still light, when he heard an "unusual crash." He looked out of the coop toward the corner of the roads and saw nothing. When he left the coops 45 minutes later he looked north and saw the overturned truck on Old Marl Road. It was dusk. He said: "it was getting dark." At a distance of 500 feet he saw a *528 car stop, some one get out of the car, look at the truck, then walk back and drive away. There was no light shining on the truck. Feiner then went into his house, washed up and ate supper. This took half an hour or so. Two men then came in and asked for a flashlight. Feiner phoned the state troopers and went out to the accident.
Another witness, Dr. Zinkin, testified that he received a phone call about the accident at about 8 o'clock and got to the accident six or seven minutes later. He pronounced White dead. His arrival was about 30 minutes after Feiner got to the scene. Dr. Zinkin's opinion was that he died almost instantly, some 15 or 20 minutes before his arrival at the scene of the accident. The body was warm, there was no rigor mortis, and the congealed blood had not yet discolored. The weather was mild and this could retard rigor mortis. In the circumstances we attach no significance as to when White may have died.
Appellant vigorously contends that the accident happened at 8 P.M., apparently on the passing oral finding of the deputy director who, however, later said:
"There has been considerable testimony about when the accident happened. Nobody can fix the exact hour or minute. We have a fairly good idea, as I have already indicated."
Considering the testimony of Dr. Zinkin and Feiner, Feiner heard the crash about 1 3/4 hours before Dr. Zinkin arrived. This would be about 6:22 P.M. The mathematics of the situation is that decedent had the accident before sunset.
There is no argument that had decedent been killed on the very same road in an accident while on his way home directly from work in the truck which the employer had provided for his and his co-employees' transportation, there would be a compensable accident arising out of and in the course of the employment. Micieli v. Erie Railroad Co., 130 N.J.L. 448, 452 (Sup. Ct. 1943). Appellant admits the general rule but claims it does not apply here because there was an abandonment of the employment as a matter of time on the occasion of the fatal occurrence. Assuming there was a deviation in *529 point of time, there is no question that such deviation had terminated, because decedent was on the road home when his death took place, proceeding along the usual route leading from the place where he customarily left Mayer, in Lakewood, to the Allenwood residence. Rachels v. Pepoon, 5 N.J. Misc. 122, 123 (Sup. Ct. 1927), affirmed on the opinion below, 104 N.J.L. 183 (E. & A. 1927); Beem v. H.D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044 (Sup. Ct. 1935); Webb v. North Side Amusement Co., 298 Pa. 58, 147 A. 846 (Sup. Ct. 1929); 7 Schneider, Workmen's Compensation (1950), p. 403, sec. 1684.
The cases cited by appellant are distinguishable because they deal with situations where the accident took place during the course of the deviation and the employee was on his personal mission, or where the injury did not arise out of a danger incident to the employment. 7 Schneider, Workmen's Compensation (1950), p. 4, sec. 1617.
The case of Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129 (W.C.B. 1948), is not applicable. There petitioner quit work at 4:30 P.M. and proceeded to make the rounds of taverns. He was injured at 2:30 A.M. when his car, which he necessarily had to use in connection with his work for respondent, was involved in an accident. The accident thus happened almost ten hours after employment had ceased, and in the meantime the employee had done nothing related to his employment. The deputy director found that he had consumed so much intoxicating beverage that he had created a situation, amounting to willful misconduct, which brought the injury upon himself. In passing we distinguish but do not approve or disapprove all the reasons set forth therein.
Appellant expressly states that it does not contend that decedent was intoxicated. The deputy director and County Court both found there was no proof whatever that the drinking episodes caused intoxication and that these episodes were the natural and proximate cause of the accidental injury and death. Taking the whole situation in the light most unfavorable to petitioner, we cannot equate this case with the Dooley case. We do not consider the deviation as unduly *530 extended (1 Larson, Law of Workmen's Compensation (1952), p. 291, sec. 19.63); therefore, when decedent started on his way home from Lakewood and had the accident he was back in the course of his employment. Vide 1 Larson, p. 270, sec. 19.25.
Petitioner here sustained the burden of proof required in compensation cases; namely, that her husband was employed by respondent; that the truck was furnished him for the convenience and purposes of the employer; that it was decedent's duty to take his assistant, Mayer, home to Lakewood; that he did so and then met his death as a result of the accident while following the usual highway route from Lakewood to his home. The nature of the employee's duties exposed him to the highway danger; the accident was directly attributed to a risk of the highway to which the employment exposed him and the injuries, and death followed as a rational sequence from a risk connected with the employment. Sanders v. Jarka Corp., 1 N.J. 36 (1948); Ohmen v. Adams Bros., 109 Conn. 378, 146 A. 825, 827 (Sup. Ct. 1929); Wineland v. Taylor, 59 Idaho 401, 83 P.2d 988 (Sup. Ct. 1938). We agree with the two trial tribunals that the accident and death arose out of and during the course of White's employment with appellant.
Affirmed.