278 P.2d 409

Application of Henry S. BARRETT, Guardian of the Estates and Persons of Florence Louise Barrett, Sherwood Barrett, Larry Barrett, Orson Levi Barrett, Simone Barrett, Diana Barrett, Letitia Barrett, Sharon Barrett, Don Bryley Barrett, and Rebecca Ruth Barrett, Minor Children, Petitioner and Applicant.

In the Matter of ESTATE of Marvin B. BARRETT, Deceased,

v.

J. V. BARRETT, Defendant Employer,

and

The Industrial Commission of Arizona, Respondents.

No. 5898.

Supreme Court of Arizona.

Dec. 31, 1954.

Rehearing Denied Jan. 25, 1955.

McKesson & Renaud and J. Gordon Cook, Phoenix, for petitioner.

Robert E. Yount, Phoenix, for respondent Industrial Commission. John R. Franks, Donald J. Morgan and Robert K. Park, Phoenix, of counsel.

TULLAR, Superior Court Judge.

By certiorari, section 56–972, A.C.A. 1939, petitioner asks us to review an Industrial Commission award denying death benefits to dependent children.

The Commission made the following findings:

"1. That the deceased, Marvin B. Barrett, was, on or about the 17th day of February, 1952, engaged in his personal pursuits and that while so engaged and not in the course of his employment, died as a result of an automobile accident which said accident did not arise out of or in the scope of the employment of Marvin B. Barrett, as an employee of J. V. Barrett, defendant employer.

"2. That the applicants are not entitled to death benefits under the provisions of the Act, by virtue of these premises or by reason of the claim filed herein."

■ The sole issue is whether these findings are reasonably supported by the evidence. This court does not weigh the testimony. The petitioner must show affirmatively his right to recover. Trett v. McElroy, 70 Ariz. 254, 219 P.2d 337. All reasonable inferences drawn from the evidence by the triers of the facts will be sustained on review. Phelps Dodge Corp. v. DeWitt, 63 Ariz. 379, 162 P.2d 605.

A detailed statement of the facts is necessary to show the problem and point to its solution.

Marvin Barrett, the deceased employee, had been working for the J. V. Barrett Contracting Company, the insured employer, for about a year prior to his death. Between 1932 and 1951, he had lived in South Carolina, where he was employed by

a seed company. In February, 1951, he and his family moved to Glendale, Arizona, where he immediately went to work for the Company as a carpenter. He was paid $2.22½ per hour and, during the last six months preceding his death, worked forty-hour weeks about half the time and forty-eight hour weeks about half the time, always at the same hourly rate.

The Company was a family concern, J. V. Barrett, Leonard R. Barrett, his son, and W. Austin Danley, a half brother of the former, having started the business in 1947 as an equal partnership to build residences. Later, for purposes of convenience, the business was put in the sole name of J. V. Barrett, but it continued, at all times, as a partnership.

During the time of the employment of Marvin Barrett, who was another half brother of J. V. Barrett, the Company was building homes in Phoenix, and plans were afoot to build 25 or 30 homes in Fredonia, and also to build some homes in Yuma where members of the family had other interests. It was contemplated that Leonard would take charge of the Fredonia project, and that Marvin would be made foreman in Yuma.

Organized in December, 1951, was Island Farms, a corporation created for the purpose of conducting a farming operation in Yuma County. Henry Barrett, who was a full brother of J. V., was president of this corporation, Leonard Barrett, W. Austin Danley, Gleason R. Sherwood and Howard L. Lamb were vice-presidents, and J. V. Barrett was secretary-treasurer. Marvin Barrett had no interest in this corporation.

On about February 12, 1952, Henry Barrett, who was in Yuma with Howard Lamb on Island Farms' business, telephoned J. V. Barrett, in Glendale, and told him that there was difficulty clearing title to the land the corporation planned to farm. J. V. said that he would come down on Saturday and bring the other officers of the corporation with him so that future plans could be decided. A day or two later J. V. told Danley of the proposed trip to Yuma, and Danley asked Marvin Barrett to accompany them. Marvin said that if it wasn't absolutely necessary he would rather stay in Phoenix and work because he needed the money. Danley told him that he would be paid and that he might bring his wife along.

Early on the morning of February 16, 1952, J. V. Barrett, Austin Danley, Leonard R. Barrett, Marvin Barrett, Gleason R. Sherwood, their respective wives, and Mrs. Henry Barrett and Mrs. Howard Lamb left Phoenix for Yuma, in two automobiles. Upon their arrival in Yuma, they met Henry Barrett and Howard Lamb at the Island Farms' property. A conference was had with the seller of the farmland and, after lunch, Island Farms' business being completed, the six couples, without the Henry Barretts, set out to look at lots suitable for residence purposes. After about four hours spent at a subdivision in Yuma, the six couples each selected a

lot upon which it was planned the Company would build each a home. J. V. Barrett gave the subdivider a check for $600, representing a $100 down payment on each lot, but it was intended that each couple would take title to its own lot.

About 8:00 p. m. the Danleys started back in their car with the Leonard Barretts. The J. V. Barretts, the Marvin Barretts, the Gleason Sherwoods started back in the J. V. Barrett car. Mrs. Henry Barrett and Mrs. Lamb remained in Yuma. Approaching Phoenix the two cars separated, and shortly thereafter, at about 12:30 a. m. on Sunday, February 17th, at the intersection of Lateral 17 and the Southern Pacific tracks, the J. V. Barrett car collided with a train. The six occupants of the car were killed.

Although the Danleys and the Leonard Barretts subsequently went through with the purchase of their lots, the Yuma projects were abandoned after the deaths. The estate of Marvin Barrett was never paid for any services claimed to have been rendered by him to the Company on February 16th or 17th, nor do the books reflect any debit or credit therefor. The surviving members of the partnership acknowledge a debt due, but in an unstated and uncertain sum.

 While it is true that the words, " 'arising out of, and in the course of the employment,' " as used in the Workmen's Compensation Act, section 56–901 et seq.,

A.C.A.1939, should be given a broad and liberal construction, nevertheless, compensation must strictly be limited to those employees or their dependents within the intendment of the legislation providing for it. The Act is not an insurance law requiring the employer to compensate every injury an employee suffers while in his employment. There must be a causal connection between the employment and the injury. McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P.2d 147; Ocean Accident & Guarantee Corp. v. Industrial Commission, 32 Ariz. 265, 257 P. 641.

This court has often defined, delineated and differentiated "arising out of," and "in the course of,"—see, e. g., Nicholson v. Industrial Commission, 76 Ariz. 105, 259 P.2d 547; Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511; McCampbell v. Benevolent & Protective Order of Elks, supra,—and no useful purpose would be served by repeating what already has been said. Each new set of facts requires its own application to the law.

 It is apparent that, while there may be a real dispute as to the exact status of Marvin Barrett as an employee of the J. V. Barrett Contracting Company during the fatal trip, there was sufficient evidence in support of the inference that he was not required by his employers to go to Yuma in furtherance of Company business; that he, as a carpenter of limited experience, was

not necessary to, or capable of assisting in, the making of Company decisions; that the making of such decisions was the only kind of Company business conducted in Yuma on that trip; that the real reasons for his attendance on the trip were personal to himself and other members of the Barrett families; that is, the selecting of future homesites and the making of future plans for the group.

 The Commission, furthermore, might have inferred that Marvin Barrett was not, in fact, to receive wages at all for the Yuma trip, but was gratuitously to be indemnified by members of his family, who also happened to be partners in the Company, for the loss of wages he might otherwise have earned had he stayed in Phoenix.

 Petitioner seeks to prevail by an application of the "going-and-coming" rule, which has been recognized by this court in such cases as Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703, and Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286. This rule has no application for the reason the Commission found he was not in the course of his employment at the time of the accident.

Award affirmed.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.

UDALL, J., having disqualified himself, the Honorable ROBERT S. TULLAR, Judge of the Superior Court of Pima County, participated in his stead in the determination of this appeal.