279 P.2d 907

**SHERRILL & LA FOLLETTE, doing business as Deer Valley Farm, Petitioners,**

**v.**

**Verna May HERRING, widow, Jessie Martin Herring, Jr., Linda Desha Herring and Forrest Douglas Herring, minor children, Dependents of Jessie Martin Herring, deceased,**

**and**

**The Industrial Commission of Arizona, Respondents.**

**No. 5911.**

Supreme Court of Arizona.

Feb. 1, 1955.

Lewis, Roca, Scoville & Beauchamp, Charles A. Stanecker, Phoenix, for petitioners.

Patrick W. O'Reilly, Phoenix, for respondent dependents.

Donald J. Morgan, Phoenix, for respondent The Industrial Commission of Arizona.

WINDES, Justice.

This is a "no insurance" case. Petitioners Charles Sherrill and William LaFollette, co-partners, doing business as Deer Valley Farm, by certiorari bring before us for re-

334

view an award of the Industrial Commission of Arizona, allowing death and accident benefits to respondents, the surviving widow and minor children of Jessie Martin Herring, deceased.

The commission held it had jurisdiction and found, among other things, as a basis for its award that: (1) decedent on August 28, 1952, while employed by petitioners sustained personal injury by accident arising out of and in the course of his employment which resulted in his death on August 29, 1952; (2) at the time of the accident Jessie Martin Herring, deceased, was employed by petitioners and at that time the latter had in their service three or more workmen who were subject to the provisions of the workmen's compensation law of this state; and (3) the petitioners (employers) carried no insurance for the benefit of these employees on their Deer Valley Farm operation, and made an award allowing compensation. By appropriate assignments petitioners advance two legal reasons why the award should be set aside; (1) that their farming operation did not fall within the mandatory provisions of the law, and (2) that the decedent so deviated from his employment as to have abandoned same thereby absolving his employer from liability.

The evidence establishes that petitioner Charles Sherrill instructed decedent Jessie M. Herring, the general foreman of the Deer Valley Farm, to take William J. Price, Jr., an employee of Valley Tillage Company, and go to Queen Creek where they were to pick up some palm trees which were to be taken to Eloy for replanting. To carry out these instructions, Price and Herring left Glendale, Arizona, Price driving a 2½-ton flat-bed truck belonging to Valley Tillage Company, and Herring following with the Ford pickup truck owned by Deer Valley Farm which he regularly used as foreman. They arrived at their destination about 12:30 o'clock p. m., and being unable to obtain the trees, Herring telephoned his employer Sherrill for further instructions and was told to leave the big truck at the service station in Queen Creek and for him "to come back to the ranch". Price, according to his testimony, was to be taken to a place where he could catch a bus to Eloy or else return with Herring to Glendale. Price elected to return to Glendale. The return trip was by way of a reasonable and direct route through Chandler to Glendale. While on this route, at 5:45 p. m. Herring ran a boulevard stop sign at the intersection of Seventh Street and Glendale Avenue and drove his employer's truck at a speed of approximately fifty miles per hour into the side of another motor vehicle resulting in the death of the driver of that car. Price was severely injured, and Herring received a fatal injury from which he died on the following day. The highway patrolman who investigated the tragedy immediately filed a negligent homicide and reckless-driving charge against Herring, but the latter's death terminated the matter. Pe-

titioner Sherrill prevented a blood alcohol test being given to Mr. Herring.

Price in due time filed a claim for workmen's compensation and accident benefits as an employee of Valley Tillage Company, and such benefits were thereafter awarded to him. The employer filed its report of the accident and made no objection to the granting of an award to Price. Petitioners now concede that this was a serious tactical blunder on their part but no one contends that they are thereby precluded from questioning the award made to Herring's dependents.

Petitioners' first contention is the commission had no jurisdiction as the Deer Valley operation does not fall within the mandatory provisions of our Workmen's Compensation Act because there was no showing that there were at the time of the accident three or more workmen employed in the use of machinery as required by section 56-928, 1952 Cum.Supp., A.C.A.1939. Bearing on this question, there was evidence as to the work performed by the more than a score of Deer Valley Farm employees. Most of this number were "irrigators" or "choppers", but Sherrill's statements under oath make it clear that even though the cotton crop was then "laid by", i. e., no further machine cultivating was required, at least three workmen were required to use machinery in the normal course of their duties. Herring, the decedent, was supplied with a truck for his daily use in supervising the operation of the farm. One La Bario, the chief irrigator, used his own truck in the performance of his duties and was compensated by petitioner for the expenses of its operation. W. M. Steenson was the mechanic, who worked on all the machinery. F. A. May, classified on their payroll as "handy man", frequently used machinery, drove tractors and trucks, and in fact was so engaged during the week in question.

The testimony concerning the duties of these men leads inescapably to the conclusion that there were three or more workmen employed in the use of machinery, and their use thereof was more than the "casual" or "occasional" use urged by petitioners as a predicate for the rule they would have us adopt.

■ We are asked to rule that in order to come under the provisions of the Workmen's Compensation Act, there must have been three or more workmen employed in the use of machinery on the day of the accident. Reliance is placed upon language used in Hight v. Industrial Commission, 44 Ariz. 129, 34 P.2d 404. That case does not by implication nor otherwise hold that such employees must be actually so employed at the time of the accident. Such contention was heretofore presented to this court and rejected. Marshall v. Industrial Commission, 62 Ariz. 230, 156 P.2d 729.

■ The commission's finding that petitioners had in their employ three or more regular employees engaged in the use of machinery is adequately supported by the

record and hence the commission did have jurisdiction to enter an award.

Petitioners contend that even though it be held that their operations brought them under the Act, still the award was improperly made because the facts establish that decedent, Jessie Martin Herring, had abandoned his employment and that the fatal injury suffered in the accident neither arose out of nor in the course of his employment. They rely upon the uncontradicted evidence heretofore set forth, coupled with these additional facts: When Herring and Price arrived at the junction of the Williams Field Road and Chandler-Mesa Highway they decided "to go down and have a beer"; hence, instead of turning right (north) toward home they turned left (south) and proceeded a block beyond the plaza or square in Chandler to a tavern where admittedly they drank four beers each and played two or three games of shuffleboard before proceeding on their way. In other words, petitioners contend that at the time and place of the accident decedent by reason of the deviation to the tavern had thereby severed and terminated the relationship of employer and employee and was, therefore, not in the course of his employment when he was injured.

■ The general rule is that in the event an employee operating an automobile in the course of his employment substantially deviates from his regular route for personal reasons and an injury occurs on the route or in the course of the side trip, the employee is outside the course of his employment and not protected, but if the diversionary trip is completed and the employee has returned to the route required by his employment, he is within the course thereof and in the event of an injury is entitled to compensation. Larson, Workmen's Compensation Law, Vol. I, sections 19.31 and 19.32, page 275. As heretofore stated, the decedent in the case at bar had completed his diversionary pleasure mission and was returning to the ranch as directed by his employer by a proper and direct route. Unless there is some special circumstance that would require the commission to find that this temporary interruption in the return trip operated to convert the entire trip after the deviation into a personal pleasure trip, we must sustain the commission in its finding that decedent was at the time of the injury in the course of his employment.

■ The only circumstances herein that could be argued as warranting this court in finding that the commission was compelled to find there was a complete termination of the employment relationship for the return trip was that they remained at the tavern for a period of from one to three hours, drank some beer and the possible inference from the testimony of the other employee, who had theretofore received compensation, that they considered their work done for the day. Certainly, the commission was not required to find decedent was intoxicated to the extent he was

incapacitated, and the fact that the accident was caused by the decedent's negligence in running a stop sign cannot operate to deprive his dependents of the benefits of the Act. L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz. 257, 30 P.2d 491. Because Price might have thought his work had terminated for the day would not require the commission to give such thought compelling force as to decedent Herring.

We do not rule that circumstances could not exist which might require a consideration of the time element but we do say that under the circumstances in this case, a time lapse of from one to three hours would not require the commission as a matter of law to infer that the decedent had abandoned his employment for the return trip over a regular and direct route. The commission is not compelled to say that the employer-employee relationship was completely severed and that the delay in complying with employer's orders converted the return trip into a pleasure jaunt. Decedent violated no express orders. His instructions were to "come back to the ranch". This employee was a foreman who did not punch a clock to determine the time of his employment. He was not a workman on an hourly basis. He had no orders to get back to the ranch at three, four, five or six o'clock. If the accident had not happened, he would have been at the ranch about six o'clock or soon thereafter. Certainly there is nothing to indicate the employer was concerned as to what particular hour he returned. Decedent was doing that which his employer directed but whether it was done immediately or one or three hours later is of no particular significance as to a foreman presumably on duty at all times.

There is a decision by a deputy commissioner of the New Jersey Department of Labor–Workmen's Compensation Bureau, denying compensation which lays substantial stress upon the time element. Dooley v. Smith Transfer Co., 26 N.J.Misc. 129, 57 A.2d 554. When this case was presented to the appellate court of New Jersey as authority for requiring a finding that the employment had been abandoned under circumstances of much more compelling force than those herein, that court not only refused to approve the Dooley decision but distinguished it and approved an award. White v. Frank Z. Sindlinger, Inc., 30 N.J. Super. 525, 105 A.2d 437, 439. Therein the court said:

"Appellant admits the general rule but claims it does not apply here because there was an abandonment of the employment as *a matter of time* on the occasion of the fatal occurrence. Assuming there was a deviation in point of time, there is no question that such deviation had terminated, because decedent was on the road home when his death took place, proceeding along the usual route leading from the place where he customarily left Mayer, in

Lakewood, to the Allenwood residence." (Emphasis supplied.)

■■■ If circumstances arise where the time element becomes of importance in deciding whether the employment was terminated by deviation and two reasonable inferences could be drawn, this court cannot disturb the conclusion reached by the commission. Barrett v. Industrial Commission, 1954, Ariz., 278 P.2d 409. Reasonableness or unreasonableness of time is a question to be determined by the fact-finding body unless only one inference can be drawn from the undisputed facts. 53 Am.Jur., Trial, section 203, page 173; 64 C.J., Trial, section 357, page 365; 88 C.J.S., Trial, § 219.

The foregoing conclusions are in harmony with former pronouncements of this court and those of other jurisdictions. Delk v. Industrial Commission, 74 Ariz. 378, 249 P.2d 943; Webb v. North Side Amusement Co., 298 Pa. 58, 147 A. 846; Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044; White v. Frank Z. Sindlinger, Inc., supra. In the Arizona case of Delk v. Industrial Commission, supra, a cattle inspector returning from an employment mission deviated from his regular route home, stopping at "Pike's Place", which was a tavern and dance hall, and remained there two or three hours. After leaving the place of entertainment but before he got back to his regular route homeward, the accident occurred. This court held it a compensable accident.

In the Pennsylvania case, supra, there was a deviation of extended duration from Friday to Sunday for recreational purposes. After termination of such purposes, the employees were on the return trip. In holding that the award for compensation would not be disturbed, the court said [298 Pa. 58, 147 A. 847]:

"The homeward trip was a necessary part of the business excursion, and since there is nothing in the facts here presented indicating that the general manager, who was in charge of the trip, intended that the journey home be otherwise than the final step of the business expedition, we have been shown no reason which would require the finders of facts to interpret it as a continuation of the recreational deviation to Atlantic City."

The award is affirmed.

LA PRADE, C. J., and STRUCKMEYER, J., concur.

UDALL, Justice (dissenting).

I am in accord with the majority's holding that the facts of the case bring the petitioners within the compulsory provisions of the Workmen's Compensation Act, hence, I agree the commission did have jurisdiction to enter an award. But I do not agree that the commission, without a more detailed finding, was justified in awarding Herring's dependents "death benefits".

There was one serious conflict in the evidence which the majority appears to consider of no legal significance. Employer Sherrill positively testified that while at home to lunch he talked to Herring in Queen Creek at 1:15 or 1:30 p. m., on the day in question, whereas employee Price stated it took them "quite a while" to get hold of Sherrill and that though he did not know the exact time of the phone conversation it was about 3:30 or 4:00 p. m. and that immediately thereafter they left for Glendale via Chandler. (In his sworn statement made eleven days after the accident he fixed this time at 4:00 or 4:30 p. m.) The exact time of this call is crucial as it not only challenges the veracity of the witness Price but determines the length of Herring's and Price's stay at the tavern in Chandler. If the employer's version was believed it extended three hours or more, while Price limits it to a period not exceeding one hour, stating they left Chandler at approximately 5:00 p. m. for home.

If the commission as the triers of fact had found, or were to expressly find, that Price's version was correct, I would experience no difficulty in approving the award, as I acknowledge that under the "rest and refreshment rule" which we have recognized in several cases a reasonable time out during this hot August working day for this purpose would not have deprived Herring or his dependents of the benefits of the Act. Here the deviation as to route was inconsequential.

On the other hand, I cannot agree with the conclusion of the majority that a deviation in time of more than three hours duration, during working hours, under the circumstances here related, would not require the commission to find as a matter of law that the time lapse was unreasonable and as a result thereof the decedent had abandoned his employment for the day. As stated by the majority the general rule is that an accident sustained after regaining *the route* from which the employee had departed is compensable. However, it is recognized and seems obvious that the route from which the employee departed must be regained within a reasonable time. The line must be drawn somewhere. Let us assume that the employees in the instant case, instead of stopping in Chandler had journeyed to Nogales, Sonora to see a bull fight and upon the return trip the next day had suffered an injury after passing the point from which they first departed from their master's business. Quaere: Would the majority then hold that upon regaining the route from which they departed they reacquired the protection of the Workmen's Compensation Act? If the rule, quoted from the Pennsylvania decision in the Webb case, upon which the majority relies, would justify an affirmative answer to the foregoing hypothetical question then I emphatically disagree with that case. However, as I read the Webb case it turned upon whether the petitioner was at the time of the fatal accident in the employ of the corporate entity or of its general man-

ager and hence it does not support their conclusion in the instant case.

It is my opinion that if Herring in arriving at Chandler at 2 or 2:30 p. m. of a weekday (Thursday) decided he was through work for the day and spent the balance of the afternoon with Price "just having a little fun" at a tavern, the deviation in time was of such duration as would constitute an abandonment of employment for the day as a matter of law, thus depriving him of the protection of the Act. The majority lay much stress upon the fact that the employee in the instant case was a foreman. The statute has made no distinction between the rights of a foreman and any other employee, as they are both servants. Certainly there is nothing in the record to indicate the commission thought this was a controlling factor. Further, as I read the record, Herring did violate his express orders. The instruction he received when he called his employer was "come on home". The majority seem to take the position that because the employer did not add the word "immediately" Herring could spend whatever time he wanted in a tavern drinking beer and playing shuffleboard and then return home when he pleased and still be protected by the Act. I cannot agree with this far-fetched conclusion. Finally, Price expressly admits that both he and Herring considered their employment through for the day. Certainly they were performing no service for their employer, but instead,

as I see it, were engaged in a strictly personal pursuit which might well have so impaired their efficiency as to render them incapable of performing any further service. The contention that the decedent was performing a service for his employer in driving the pickup truck back to the ranch is of no force whatever. He had to get back to his home whether he had or had not previously abandoned his employment.

Every case presents its own facts, hence, I realize no hard and fast rule can be laid down. See, Van De Carr v. Esso Standard Oil Co., 282 App.Div. 902, 124 N.Y.S.2d 833. In the Sindlinger case, relied upon by the majority, the time element was about one and one-half hours, in the Dooley case it was ten hours. It is to be noted that in the Sindlinger case the Court in referring to the Dooley case stated: " * * * In passing we distinguish but *do not approve or disapprove* all the reason set forth therein." I believe the rationale of the Dooley case is irrefutable. Owen v. Hardware Mut. Casualty Co., 5 Cir., 158 F.2d 471, is another case in point. There, as here, a violation of instructions was involved and compensation was denied where there was a deviation of some seven hours in point of time. Our decision in the Delk case, cited in the majority opinion, turned on a "deviation in route" and not "deviation in time", hence it has no application.

From the record it does not appear that the commission considered the lapse of time controlling as no express finding was made

thereon. The finding that the decedent was killed "by accident arising out of and in the course of his employment" is so broad and general that it is meaningless on this precise question. It is a mere categorical repetition of the statutory words governing compensability. Cf. Moore's Case, 330 Mass. 1, 110 N.E.2d 764. Furthermore it is a mixed finding of fact and conclusion of law and, of course, we are in nowise bound by the commission's view of the law. Goodyear Aircraft Corp. v. Industrial Comm., 62 Ariz. 398, 158 P.2d 511. Without a determination of the length of time decedent remained at the tavern I cannot determine whether the award entered by the commission was lawful.

This court has previously had occasion to set aside awards of the Industrial Commission when it appeared from the record that the commission had not made a determination of a controlling fact. See, English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815; Magma Copper Co. v. Naglich, 60 Ariz. 43, 131 P.2d 357; cf. King v. Alabam's Freight Co., 40 Ariz. 363, 369, 12 P.2d 294; Martin v. Industrial Commission, 75 Ariz. 403, 257 P.2d 596. Therefore, in order to do justice between the petitioners and respondent dependents I would set aside the award and remand it for a rehearing and an express finding on this crucial fact.

PHELPS, Justice.

I concur in this dissent.