WEST TENNESSEE NIX-A-MITE SYSTEMS, INC, and SHELBY MUTUAL INSURANCE CO.

*v.*

MRS. HAZEL FUNDERBURK.

(*Jackson,* April Term, 1961.)

Opinion filed May 5, 1961.

382

SIDNEY W. SPRAGINS, SPRAGINS, MENZIES & SPRAGINS, Jackson, for plaintiffs in error.

PAUL G. HUDGINS, HUDGINS & HUDGINS, Union City, for defendant in error.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

This is a Workmen's Compensation Case in which Mrs. Hazel Funderburk, a resident of Union City, Tennessee, sued on her own behalf and for the use and benefit of her two minor children, the West Tennessee Nix-A-Mite Systems, Inc., for benefits.

The trial judge found for the petitioner.

The only question presented here is whether the accident arose out of and in the course of employment of her deceased husband, who was killed when the truck he was driving left the road near Union City, when he was instantly killed.

The deceased, a truck driver for the defendant, on Friday morning, April 24, 1959, reported to work at about 7:00 a.m. after leaving his wife at her work. He was directed by his employer to go to Jackson, in a company pickup truck on company business. During the stay in Jackson he was contacted by his employer and advised that he was to drive to Humboldt, and there was to exchange the pickup truck for the company two-ton truck for the purpose of going to Memphis, to Choctaw, Inc., where he was to pick up an air compressor.

The proof shows that one Jimmy Latimer, the son of the president and manager of the company drove the company two-ton truck to Humboldt, and near a grocery store met the said Ollis Funderburk and exchanged trucks. At that time the deceased had another company employee with him. The other employee apparently had assisted deceased in his work at Jackson. This employee left deceased in Humboldt and the deceased proceeded to Memphis alone in the two-ton truck.

Before leaving Humboldt, the proof shows that the deceased tried to borrow $2 from Jimmy Latimer stating that he had no money with which to buy gas and his meals. Jimmy Latimer had only fifteen cents with him and therefore no loan was made. Apparently, the company overlooked furnishing the said deceased with any cash with which to take care of meals and gasoline.

Some witnesses testified as to when they first saw the deceased was in Obion, Tennessee. It seems that upon reaching Obion, deceased drove the company truck off of U.S. Highway 51 for a distance of about one-tenth of a mile to what is known as the American Legion Hall in Obion.

The proof shows that this Hall is little less than two blocks off U.S. Highway 51; that the Hall is known as a dance hall, that beer is sold at the Hall but that no hard drinks are allowed.

On the evening of April 24, 1959, one Charlie Tarkington, a close friend of the deceased, was playing in a hillbilly band for a dance at the American Legion Hall in Obion, and it appeared that deceased knew that his friend was playing at the Hall. Tarkington testified that he first saw deceased sometime about 10:00 p.m.; that he was dressed in his work clothes, was dirty, and spoke of being tired.

He testified that he thought deceased was just coming into the dance hall when he first saw him. A sister of the deceased also testified that she went to the Legion Hall with friends and a date, and that her brother was in the Legion Hall when she reached there. She states that they reached the Legion Hall sometime about 10:00 p.m.

No proof of any sort was offered in this proceeding by the defendant.

It appears that the deceased went to the rest room and later he sat at a table and during the course of the evening witness Tarkington said the deceased ordered two beers.

Tarkington testified that during a break he talked with deceased, and he asked to borrow $3 from him stating that he was almost broke having something less than a $1 on hand, and that he wanted to use the money to buy his supper when he reached Union City. Tarkington states that he let him borrow the $3. The proof shows that the American Legion Hall closed promptly at 12 o'clock.

It appears from the testimony that the last person to see the Nix-A-Mite truck, after it left from the Hall about 12:30 a.m., and before the wreck, was a man by the name of Lee. He states that about 12:30 a.m. he was rounding a curve which is shown by the proof to be the "youngblood curve" and saw some distance from him the lights of an approaching car of truck. He states that he later saw the car approaching him was a truck.

Apparently Lee was approaching the point where the collision occurred at a speed of approximately 50 miles per hour and according to his estimate the truck approaching him was being driven at about the same speed.

The testimony further shows that as Lee was driving from Union City to Obion, he made a turn to his left at the youngblood curve. Lee further testified that when the truck was about 200 or 300 yards from him the truck appeared to begin shimmying and that he judged this because of the lights; that soon thereafter the truck went off the road into a ditch on the right and that in this manner the deceased was killed.

From this testimony the Court is of the opinion that the accident arose out of and in the course of the deceased's employment.

■ In order to be compensable, an injury need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence and reasonably have been if thought of at the time of employment considered a risk. *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 270 S.W.2d 389.

■ If the duty of the employee creates the necessity of travel, then the risks of travel are directly incident to the employment itself and in such cases resulting injuries are the proper subjects for compensation. *Martin v. Free Service Tire Co.*, 189 Tenn. 327, 225 S.W.2d 249.

Now in the case before us it appears that the deceased was hungry and that he was practically without funds, and there is material evidence to show that his kinsmen let him have $3 to buy food and gasoline.

■■ An unauthorized deviation may preclude recovery of compensation for an injury caused by an added peril to which the employee is thereby exposed during the period of the deviation, but the compensability of an injury occurring after the deviation has ended and the employee is again in the course of his employment is not ordinarily affected thereby. 58 Am.Jur. 734, Section 227.

We think that under the facts in this particular case the deceased had a right to seek funds for his necessary food and gasoline and that did not take him from the protection of the Workmen's Compensation Act.

There is no doubt in the present case that even though there was a deviation the deceased had returned to route required by his employment. Citing *Sherrill & LaFollette v. Herring*, 1955, 78 Ariz. 332, 279 P.2d 907.

As above stated the only question is whether the accident which resulted in the death of Ollis Funderburk, was an accident arising out of and in the course of his employment as provided by T.C.A. Section 50-901 et seq. as an employee of West Tennessee Nix-A-Mite Systems, Inc.

The only proof presented in the record is that which was taken by petitioner. No proof of any sort was offered by either the employer or the insurer.

We find that the record shows that there was material evidence to show that this accident arose out of and in the course of the deceased's employment and this being so the judgment of the lower court must be affirmed.