STEPHENS, APPELLEE, *v.* YOUNG, ADMR., BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLANTS.*

(No. 214—Decided May 11, 1961.)

*Messrs. Miller, Searl & Fitch* and *Mr. Thomas H. Monger,* for appellant.

*Mr. Arlo L. Chatfield* and *Mr. W. H. Lohr,* for appellee.

---

*Motion to certify the record overruled (37205), November 8, 1961. Appeal as of right dismissed, 172 Ohio St., 484.

COLLIER, J. The application of Lowell G. Stephens for payment of compensation for an injury alleged to have been received in the course of and arising out of his employment while he was an employee of the Jewel Tea Company, Inc., was denied by the Industrial Commission of Ohio on the ground that the alleged injury was not received in the course of and arising out of his employment.

From that decision of the Industrial Commission, the claimant appealed to the Common Pleas Court of Jackson County. The petition follows the usual pattern in cases of this kind and the answer of the Jewel Tea Company, Inc., denies that the alleged injury was sustained in the course of and arose out of claimant's employment with the defendant. The issues were submitted to a jury, and a verdict was returned in favor of the plaintiff, finding that the plaintiff was entitled to participate in the State Insurance Fund. Judgment was rendered on the verdict and a motion for a new trial was overruled, from which judgment this appeal on questions of law has been perfected to this court.

The factual situation, as disclosed by the record may be summarized as follows: On November 1, 1955, Lowell G. Stephens, herein referred to as the plaintiff, was employed by the Jewel Tea Company, Inc., herein designated the defendant, selling merchandise from a truck provided by the defendant. The defendant maintained a warehouse in Jackson, Ohio, and plaintiff loaded his truck from this warehouse prior to following a designated route in calling on customers. On the evening of November 1, 1955, plaintiff loaded his truck at the warehouse and proceeded to Wellston, a distance of approximately 10 miles, where he was to work the following day. Plaintiff arrived in Wellston about 8 p. m. and stopped at a gasoline station to have his truck serviced. At that time he remarked that he had left his route book in the warehouse and would have to return for it. While the truck was being serviced by William Griffis, an employee at the station, plaintiff and Clyde Norton, the operator of the filling station, went across the street to a restaurant and from the restaurant to a bar known as Stone's Grill, drank some beer and returned to the filling station about 9 p. m. The plaintiff had in his possession approximately $300 he had collected that day from his customers. The plaintiff

drove his truck away from the gasoline station and parked and locked it near Stone's Grill. He then returned to Stone's Grill where he met Clyde Norton and William Griffis and where they had planned to meet. While they sat in a booth drinking beer, a stranger, later identified as one Lockwood Cantrell, approached the booth and drank some of plaintiff's beer. After an altercation between the operator of the bar and Cantrell, the plaintiff gave his beer to Cantrell and invited him to join the party.

While at Stone's Grill, the plaintiff remarked that he had to return to Jackson to obtain a route book, and Cantrell offered to drive plaintiff in his automobile to Jackson for that purpose. Later the plaintiff and Cantrell visited another bar, known as Son's Grill, where more beer was consumed. Plaintiff then purchased gasoline for Cantrell's automobile to make the trip to Jackson for the route book. The plaintiff's testimony is that while he was in the front seat of Cantrell's automobile, on the way to Jackson, near the city limits of Wellston, Cantrell struck him twice on the head, thereby inflicting the serious injuries complained of, and robbed him of all the money he had on his person and threw him out of the car, where he was found early the next morning by the driver of a milk truck.

The defendant sets forth five assignments of error, but, as we view the record, the sole question to be determined is whether the evidence is sufficient to establish the fact that the plaintiff sustained an injury in the course of and arising out of his employment with the defendant.

The defendant takes the position that when the plaintiff parked and locked his truck and left it on the street in Wellston to visit a bar with Norton and Griffis for the purpose of drinking beer he was no longer in the course of his employment with the defendant; that from that time plaintiff embarked upon a frolic of his own; that the fact that the plaintiff had in his possession money belonging to the defendant was of no consequence; that, assuming plaintiff did arrange with Cantrell, a stranger, with whom he was drinking beer, to transport him to Jackson to obtain the route book, plaintiff had departed and deviated from his regular course of employment; and that there was no causal connection between plaintiff's injury and the conditions under which his work was required to be performed.

The plaintiff contends that he was at all times engaged in

the course of his employment; and that if there was a deviation when he visited the bars for the purpose of drinking beer, he had returned to the performance of his duties for the defendant when he procured the services of Cantrell to carry him in the automobile to Jackson to obtain the route book.

It is a fundamental rule under the Ohio workmen's compensation law that, for an injury to be compensable, it must have occurred in the course of the workman's employment. An injury which has its cause entirely outside of and disconnected from the business in which the workman is employed is not compensable. 42 Ohio Jurisprudence, 626, Section 50. The rule is simple, but its application is difficult and the conclusion depends entirely upon the facts and circumstances in each individual case.

In the instant case, unquestionably, the plaintiff abandoned his employment when he parked his truck and locked it and left it on the street and went to Stone's Grill for his own pleasure and indulgence. Plaintiff's activities, drinking with his friends and the stranger, Cantrell, in the two taverns for a period of two hours or more had no connection with or relation to his employment. In the case of *Ruddy* v. *Industrial Commission*, 153 Ohio St., 475, a salesman interrupted his work by stopping at a cafe to purchase cigarettes and remained in the cafe 25 minutes, during which time he bought two glasses of beer, and while crossing the street to return to his car was struck and injured. The Supreme Court of Ohio in that case held that the salesman was not at the time of injury in the course of his employment and that his injuries did not arise out of his employment, hence, he was not entitled to compensation for such injuries. Also, in the case of *Eagle* v. *Industrial Commission*, 146 Ohio St., 1, the claimant-employee, returning from a call on her way back to her place of employment, paused enroute to take her lunch when she slipped and fell in the restaurant thereby sustaining the injuries complained of, and it was held that such injury was not sustained in the course of and arising out of claimant's employment.

There is evidence in the record that the plaintiff in the instant case was in a tavern in Jackson between eleven and twelve o'clock on November 1, 1955, which, if true, would negative the fact that he was assaulted on the way to Jackson, but obviously

the jury believed plaintiff's testimony, that he accepted Cantrell's offer to convey him to Jackson to obtain the route book and that plaintiff was assaulted and robbed by Cantrell while making the trip.

In our view of the situation, the controlling fact, in determining whether the plaintiff re-entered his employment when he began the journey to Jackson in Cantrell's automobile, is that he changed his mode of travel provided by his employer, a mode of travel and means of transportation not contemplated by his contract of employment. If, after visiting the taverns, the plaintiff had returned to his truck and driven it to Jackson to obtain the route book and had the assault occurred when plaintiff was using the means of transportation provided for him, we would be confronted with a situation much more favorable to the plaintiff. The risk the plaintiff took in accepting a ride in the night season with a stranger whom he had met in a tavern was not reasonably incident to or essentially connected with his employment, when he was provided with a truck for use in the performance of his work. In *State, ex rel. Miller,* v. *District Court,* 138 Minn., 326, 164 N. W., 1012, a messenger boy was provided with car fare but climbed upon a motor vehicle and while so riding was severely injured. The Supreme Court of Minnesota, in that case, held that when the claimant sought other methods of transportation he deserted the scope or ambit of his employment and while so doing was not protected by the compensation act.

After a careful examination of this entire record, our conclusions are that the plaintiff's injury was not sustained in the course and arising out of his employment with the defendant; that the plaintiff abandoned his employment when he parked his truck and visited the taverns; and that he did not re-enter his employment when he accepted a ride with a stranger, but assumed a risk not essential to his employment and, therefore, his injury is not compensable.

The judgment of the Common Pleas Court is reversed and final judgment is rendered for the defendant, appellant herein.

*Judgment reversed and final judgment for defendant.*

RADCLIFF, P. J., and BROWN, J., concur.