WYOMING STATE TREASURER ex rel. WORKMEN'S COMPENSATION DEPARTMENT, Appellant, the University of Wyoming, (Employer below),

v.

Doran Kenneth BOSTON, David John Bostrom and Joan Colgan, widow and dependent of Randy J. Colgan, Deceased, Appellees (Claimants below).

No. 3679.

Supreme Court of Wyoming.

Oct. 4, 1968.

Joseph E. Darrah, Sp. Asst. Atty. Gen., Cheyenne, Joseph R. Geraud, Laramie, for appellant.

Tom H. Barratt, Laramie, for appellee Doran Kenneth Boston.

Lawrence A. Yonkee, Sheridan, for appellee Joan Colgan.

No appearance for appellee David John Bostrom.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Claims of compensation under Workmen's Compensation were allowed by the judge of Natrona County district court.

The State Treasurer, as trustee of the state's industrial accident fund, has appealed. Although an attorney for the University of Wyoming, the employer, has joined in and signed the brief of appellant, the record does not indicate the University has appealed.

It is conceded by all parties that Doran Kenneth Boston, David John Bostrom, and Randy J. Colgan were all employees of the University of Wyoming when the accident in question occurred. The three men, all of whom were enrolled as students in the University, were employed to assist in the conduct of a highway research project between Midwest and Kaycee, Wyoming. They were assigned to take certain sub-surface moisture measurements, density measurements and measurements on surface elevations on the roadway at the project site.

A vehicle owned by the University of Wyoming was furnished for the purpose of providing necessary transportation between the job site and Casper, where the crew had lodging accommodations. Events leading up to the accident are not in serious dispute. Insofar as there may have been minor conflicts in testimony, however, claimants are entitled to rely on that most favorable to them, and we will relate the facts accordingly.

The three employees finished work on Saturday evening, March 25, 1967, approximately 12 miles south of Kaycee. They quit work about 5:30 p. m., but on account of getting stuck in the mud they did not get to Midwest until about 8:00 p. m. Midwest was on the way toward Casper and was the place where the crew stored its equipment. After storing the equipment, the men went to the Rimrock Cafe and Bar in Midwest. There they ate dinner, drank some beer, played the bowling machine, and remained until approximately 10:30 p. m.

The crew then decided to go to Kaycee, in the opposite direction from Casper. There they played another bowling machine and drank a limited amount of beer. Upon leaving Kaycee, about 1:00 a. m., Bostrom drove the vehicle and proceeded toward Midwest and Casper. He claims the others were asleep when he got to Midwest, and that he proceeded on toward Casper so the men could get some sleep before returning to the job.

About 19 miles out of Midwest, toward Casper, at approximately 2:00 a. m., the vehicle left the roadway, travelled about 65 feet and hit a bridge abutment. The collision resulted in the death of Colgan and injuries to the other two employees.

The University of Wyoming objected to the allowance of compensation, but the court entered its order allowing compensation. The state treasurer then petitioned to reopen the case. This was allowed and the matter was heard again, with the treasurer's office represented. The court reaffirmed the awards of compensation, and the treasurer has appealed.

Appellant contends the allowance of compensation was not proper because (1) there was a deviation from, and an abandonment of, the employment at the time of the accident; and (2) there was not shown a causal relationship between the accident and a furtherance of the employer's business.

Section 27–49 [III](a), W.S.1957, C. 1967, specifies that the words "injuries sustained in extrahazardous employment" shall not include injuries occurring while the employee is on his way to assume the duties of his employment or after leaving such duties, if the employer's negligence is not involved.

In Jensen v. Manning & Brown, Inc., 63 Wyo. 88, 178 P.2d 897, 907, however, it was held where the employer furnishes claimant with free transportation to and from his home as an incident of the contract of employment and for the mutual advantage of both, injuries suffered in an accident during such transportation are compensable under the Workmen's Compensation Act. The court considered that the injuries, under such circumstances, are sustained during the course of the employment relationship. 178 P.2d 908. That, of

course, is equivalent to saying the duties of employment are assumed during such transportation.

Where the employer does not furnish transportation for the employee who is injured going to or returning from work, the rule of the *Jensen* case does not apply. See White Ditching Co. v. Giddeon, Wyo., 413 P.2d 45, 47. Suffice it to say, as far as the present case is concerned, appellant-treasurer concedes that if the employees had not deviated from the homeward journey by traveling from Midwest back to Kaycee and spending time there, the death and injuries sustained in the accident would have been compensable.

■ The trial court drew special attention to the fact that it is undisputed lodging in Casper was authorized by the employer and the workmen were entitled to charge the employer for the time spent in travel to and from work. This makes it abundantly clear that, absent any deviation, the employment relationship would extend during travel to and from work. In holding that such relationship existed at the time of the accident here involved, the trial court relied on the fact that the accident occurred "on the route" of the workmen's travel to and from work.

As to whether there was such a deviation from employment as to constitute an abandonment of the employment, we notice in 1 Larson's Workmen's Compensation Law, § 19.32, p. 294.73, the case where a personal deviation has been completed and the direct business route has been resumed is referred to as a clearly compensable type of case.

■ Courts have often applied the rule that, when an employee is covered by a compensation act, an unauthorized side trip for personal reasons usually precludes a recovery for an injury during the side trip. However, when the diversionary trip is completed and the employee has returned to his original route, he is again covered by the act; and, if injured after resuming his authorized travel, he may recover. Sherrill & LaFollette v. Herring, 78 Ariz. 332, 279 P.2d 907, 909–910; West Tennes-

see Nix-A-Mite Systems, Inc. v. Funderburk, 208 Tenn. 381, 346 S.W.2d 250, 253. See also 58 Am.Jur., Workmen's Compensation, § 227, p. 734; and 1 Larson's Workmen's Compensation Law, §§ 19.31 and 19.32, pp. 294.72–294.74.

■ We are not prepared to subscribe to this rule for all circumstances. There may be circumstances in some cases which would make it necessary to say as a matter of law that there was a complete abandonment of the employment relationship. But we do say, under the circumstances in this case, that the side trip from Midwest to Kaycee and back again to Midwest, lasting approximately three hours at nighttime when further work was not expected, would not require the trier as a matter of law to infer that the employees had abandoned their employment. See Sherrill & La-Follette v. Herring, 78 Ariz. 332, 279 P.2d 907, 910.

In the Sherrill & LaFollette case at 279 P.2d 911, the Arizona Supreme Court stated, if circumstances arise where the time element becomes of importance in deciding whether the employment was terminated by deviation and two inferences can be drawn, the appellate court cannot disturb the conclusion reached by the trier. It was pointed out reasonableness or unreasonableness of time is a question to be determined by the fact finder unless only one inference can be drawn from the undisputed facts.

For a statement by our court of the general rule where two inferences can be drawn, see Bocek v. City of Sheridan, Wyo., 432 P.2d 893, at 895.

In the case we are now concerned with, all employment duties were completed for the day—except for the return to Casper. This could be an important factor in determining whether the deviation was reasonable or unreasonable from the standpoint of time. No doubt the trial judge considered this fact, and it may have influenced his decision.

In White v. Frank Z. Sindlinger, Inc., 30 N.J.Super. 525, 105 A.2d 437, 439, the

court used language to the effect that the deviation there involved was not "unduly extended." It was therefore held that the deviation terminated when the employee resumed his trip home and that the accident arose out of and during the course of employment.

Also in Ortega v. Ed Horrell & Son, 89 Ariz. 370, 362 P.2d 744, 745, a deviation was involved where two employees took part-time ranch hands to Douglas, Arizona, and after depositing the passengers about midnight, the employees went across the border to Agua Prieta where they spent some time in a bar. They then came back across the border and slept in the car. On their return trip one of the employees was killed in an accident. The court held the deviation did not constitute an abandonment of the employment; that the deceased was in the course of employment at the time of the accident; and that the death was compensable.

Concerning a causal relationship between the accident and a furtherance of the employer's business, counsel for appellant cites a number of authorities which state the general proposition that there must be a causal connection between the employment and the injury. Then counsel asks, could it be said that the side trip taken by the employees, coupled with the time involved, was undertaken to mutually benefit the employer or further the employer's business under any circumstances?

The answer to this question is that it is not claimed and we do not hold there was a causal connection between the employment and activities indulged in on the side trip from Midwest to Kaycee and back to Midwest. We do hold there is a causal relationship during travel to and from work, where as in this case the employer furnishes transportation as an incident to the contract of employment. That was the holding in Jensen v. Manning & Brown, Inc., 63 Wyo. 88, 178 P.2d 897, 908.

■ Inasmuch as we are holding the employees were in the course of their employment when the deviation ended at Midwest and they resumed their return trip to Casper, it necessarily follows that there was a causal connection between the employment and the accident. It happened on the return trip to Casper after the employees had resumed their homeward journey.

■ There has been no claim of culpable negligence in this case, and we have no need to concern ourselves with who or what may have caused the accident. Our Workmen's Compensation Act makes the benefits provided for in the act the sole and exclusive remedies of the workmen. Thus, Boston and the heirs of Colgan are deprived of any right to sue the employer for damages caused by the negligence of its employee Bostrom. This and other considerations have caused us to say the compensation law is to be liberally construed so that where reasonably possible the industry and not the individual workman should, to a large extent, bear burdens of accidents suffered within it. In re Gimlin's Claim, Wyo., 403 P.2d 178, 180.

Since the employees in this case, at the time of the accident, had terminated their deviation and resumed their homeward journey, with transportation furnished by the employer; and since the trier of fact has found the deviation not to have been so unreasonable as to denote an abandonment of employment, we conclude the awards of compensation should be approved.

Affirmed.

Mr. Justice PARKER, dissenting.

I cannot accept the view of the majority that since there was no claim of culpable negligence in this case "we have no need to concern ourselves with who or what may have caused the accident." It is surprising that neither the employer nor the state treasurer directly raised the question of the employees' negligence. However, even though the burden of proving that an employee is guilty of misconduct amounting to serious or willful misconduct is upon the employer, who must present the matter as

an affirmative defense, the burden was on the claimants to prove, at least prima facie, each of the elements entitling them to compensation, including the actual time of the injury, its cause, and its relation to the employment at the time of injury. In re Hardison, Wyo., 429 P.2d 320, 322; Bemis v. Texaco, Inc., Wyo., 401 P.2d 708, 709. Accordingly, it was error for the trial court and the majority here to address themselves only to the fact that the accident occurred at a time when the employees were returning on a portion of the authorized course of travel and in so doing to ignore the significant incidents of the prior deviation disclosed by the record.

The three men had commenced their employment activities in the Midwest area on Wednesday, March 22, continuing through Saturday, March 25. On Saturday they had arisen at approximately 4 a. m., arrived at the work site between 5:30 and 6 a. m., did not stop for lunch, but continued their activities until about 5:30 p. m. They decided to go to Kaycee but, after being stuck in the mud until about 8 p. m., drove to Midwest to leave their equipment. After supper and drinking there (each had three beers and Boston and Colgan more), they did go to Kaycee, arriving at approximately 11 p. m. and leaving sometime after 1 a. m. (each again being served three beers and Boston and Colgan doing additional drinking). Their intention, due to the lateness of the hour—they had been without sleep for over 21 hours—was to go to Midwest, pick up their equipment, return to the research site, finish work, drive to Casper, and then go on to Laramie either Sunday evening or Monday morning. On arriving at Midwest, the driver, Bostrom, could not awaken the other two and, deciding there was no sense in his trying to go out and work, was proceeding to Casper when he "felt a little bit drowsy, * * * rolled down the window, turned on the radio and was revived fully * * * rolled up the window * * * and then the accident occurred shortly"—his worker's report stating, "fell asleep at the wheel." The patrolman arrived at the scene of the accident about 2:30 a. m. Bostrom was in the hospital between 3:30 and 4 a. m. and consented to a blood alcohol test, the result showing "point zero three."[1] (In Richard v. George Noland Drilling Company, Wyo., 331 P.2d 836, 840, this court observed that a claimant in an advanced state of intoxication may abandon his employment by making himself incapable of engaging in his duties.)

Although I have carefully considered the evidence in the light most favorable to claimants, I cannot arrive at any other conclusion than that the accident occurred because of the deviation, and the happenstance that the automobile was en route to Casper at that time cannot change the fact that under the circumstances here present there could not be a holding that the three men were injured as a result of their employment, rather there was an abandonment of employment which precluded an award under the Workmen's Compensation Law. Stephens v. Young, 115 Ohio App. 13, 184 N.E.2d 112; Public Service Co. of Northern Illinois v. Industrial Commission, 395 Ill. 238, 69 N.E. 2d 875.

I would reverse.

---

1. Judicial notice may be taken that tests as to the influence of alcohol on operators of motor vehicles have shown performance was impaired on the average by 25 to 30 percent when the alcohol concentration in the blood reached 0.03 to 0.04 percent and that the impairment was 35 percent when the alcohol concentration in the blood was 0.05 percent. These facts are discussed in McFarland, Human Factors in Air Transportation, pp. 297–298 (1953), and relate to experiments conducted at sea level. It is common knowledge that the influence of alcohol is more pronounced at higher altitudes.