BARBARA B. RAINEAR, PLAINTIFF-APPELLANT, v. C. J. RAINEAR CO., INC., DEFENDANT-RESPONDENT, AND BARBARA B. RAINEAR, EXECUTRIX OF THE ESTATE OF WARREN R. RAINEAR, JR., DECEASED, PLAINTIFF-APPELLANT, v. C. J. RAINEAR CO., INC., DEFENDANT-RESPONDENT.

Argued May 21, 1973—Decided June 26, 1973.

*Mr. Jan R. Evans* argued the cause for the appellant (*Messrs. Evans and O'Brien,* attorneys).

*Mr. James J. Casby, Jr.* argued the cause for the respondent (*Messrs. Casby & Garrigle,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. The Division of Workmen's Compensation and the Camden County Court found that the decedent's accidental injury and death arose out of and in the course of his employment within the broad statutory contemplation and were therefore compensable. The Appellate Division reversed in an unreported *per curiam* and we granted certification on the plaintiff's application. 63 *N. J.* 257 (1973).

█ The decedent Warren Rainear, Jr. of Turnersville, N. J. was employed as an assistant purchasing agent by the respondent family corporation C. J. Rainear Co., Inc. of

Philadelphia, Pa. His duties included buying, estimating, billing and occasional sales, pickups and deliveries. His wife testified that while his work was mainly office work he "did do selling" to a customer at its premises located along his route to and from home. She also testified that while his customary work hours were from nine to five he "always brought work home." He was a paraplegic and had a specially equipped car which he used for transportation. Although the respondent had furnished his wife with a company car, his car was not owned by the company, though it paid for all operating expenses including gasoline, repairs, etc. There was testimony by his wife indicating that the company made installment and insurance payments on his car though the payments may not have appeared as such on the company records. The Workmen's Compensation Division found that he was not given the use of a company car "because of insurance rating problems" but that the company "provided all travel expenses." This finding, along with the supporting underlying circumstances, brought the decedent within the established rule that, where the employer provides for the employee's transportation to and from the place of employment, workmen's compensation coverage is applicable during such travel. See *Hammond v. The Great Atlantic & Pacific Tea Co.*, 56 *N. J. 7*, 11–12 (1970); *Filson v. Bell Tel. Labs., Inc.*, 82 *N. J. Super.* 185, 191 (*App. Div.* 1964); *Rubeo v. Arthur McMullen Co.*, 117 *N. J. L.* 574, 578–579 (*E. & A.* 1937); cf. *Moosebrugger v. Prospect Presbyterian Church*, 12 *N. J.* 212, 218 (1953) (dissenting opinion); 1 *Larson's Workmen's Compensation Law*, § 16.30, *p.* 270 (1972).

On Friday, July 11, 1969 the decedent left home for work, telling his wife that he would be staying late to clear up his desk. He planned a week's vacation commencing on the following day. At about 6 P.M. he left his employer's premises and apparently stopped for dinner at Schillig's, a restaurant and bar located on the Black Horse Pike, Mt.

Ephraim, N. J. The record is obscure as to what actually happened thereafter, although it may be assumed that he did some drinking at Schillig's and remained there for a considerable period of time. At about 3:50 A.M. on July 12, 1969, while he was on his way home to Turnersville, he was in an unwitnessed accident. The accident occurred on the Black Horse Pike, a route home running in a generally parallel direction with the North-South Freeway which was his more customary route. His wrecked car was examined later and was found to contain many manuals and invoices connected with company work. He was taken by ambulance to the Kennedy Memorial Hospital and from there he was taken home. He was subsequently readmitted to the hospital and died there on July 29, 1969.

The decedent's wife testified that when she visited him at the hospital on July 14, 1969 he told her that the accident occurred while he was coming home from work and that he was on the Black Horse Pike because he had stopped at Schillig's. She denied that he told her he had gotten drunk at Schillig's, although she assumed he had done some drinking. A State Trooper testified that when he interviewed her in August, 1969 she stated that the decedent had told her he had gotten drunk; however, when she was recalled for further testimony she denied making such statement. The hospital records made no mention of drinking and there is nothing in the record to confirm any suspicion that drinking caused the accident. Neither the Division of Workmen's Compensation nor the County Court found intoxication, and the Appellate Division's opinion noted that it was "not contended that the injuries were due to intoxication, hence were not compensable." See *N. J. S. A.* 34:15–7.

The Division of Workmen's Compensation found that after the decedent left Schillig's and was on his way home he was traveling within the scope of his employment and that the injuries and death resulting from the ensuing accident arose out of and in the course of his employment within the

contemplation of the statute. The finding by the County Court was to the same effect. Its opinion acknowledged that there was a deviation while the decedent was at Schillig's but pointed out that the accident occurred after the deviation had been terminated and the decedent was again on his way home along a permissible route. The County Court stated that it could not determine that the ten hour delay from the time the decedent left his employer's premises to the time of the accident "was so unreasonable to deny compensation to petitioner when the accident occurred when Warren Rainear, Jr. was on his way home in a direct route of travel, there being no evidence of his whereabouts during that interval, save what he told his wife on his arrival home after the accident, and that he had dinner and alcoholic drinks at a bar-restaurant; no testimony having been produced that either intoxication or some deficiency of the decedent's was the proximate cause of the accident."

In reversing the County Court, the Appellate Division did not differ with the finding that since the employer was paying travel expenses the decedent was entitled to workmen's compensation coverage during travels to and from work; nor did it differ with the finding as to the absence of proof of causative intoxication. However it determined that "the ten hour separation from any employment function, in a place distant from the employer's place of business and under the circumstances herein found, amount to such a departure from the decedent's reasonable sphere of employment as to require a conclusion that the accident did not arise out of his employment." The Appellate Division did not deal at all with the legal effect of the termination of the departure and the decedent's return to his travel home, nor did it discuss pertinent opinions such as *Green v. Bell Cleaners,* 65 *N. J. Super.* 311 (*App. Div.*), *aff'd* 35 *N. J.* 596 (1961), *Robinson v. Federal Telephone & Radio Corp.,* 44 *N. J. Super.* 294 (*App. Div.* 1957), and *White v. Frank Z. Sindlinger,* 30 *N. J. Super.* 525 (*App. Div.* 1954). *Cf. Gentry v.*

*Lilly Co.,* 476 *S. W.* 2d 252, 254–255 *(Tenn.* 1971) ; *Sedlack v. J. & A. Custom Heating & Air Cond., Inc.,* 32 *A. D.* 2d 1020, 301 *N. Y. S.* 2d 1002, 1004–1005 (1969), *aff'd* 27 *N. Y.* 2d 784, 315 *N. Y. S.* 2d 850, 264 *N. E.* 2d 344 (1970) ; *Wyoming State Treasurer ex rel. Work. Comp. Div. v. Boston,* 445 *P.* 2d 548, 550 *(Wyo.* 1968) ; *Mohawk Rubber Co. v. Claimants in Death of Cribbs,* 165 *Colo.* 526, 529–530, 440 *P.* 2d 785, 787 (1968) ; *Mansfield v. General Adjustment Bureau,* 20 *N. Y.* 2d 881, 285 *N. Y. S.* 2d 854, 232 *N. E.* 2d 852 (1967) ; *Durkee v. Atlantic Refining Co.,* 27 *A. D.* 2d 773, 277 *N. Y. S.* 2d 184 (1967) ; *LoMonico v. Coca Cola Bottling Co. of N. Y.,* 28 *A. D.* 2d 1053, 1054, 284 *N. Y. S.* 2d 16, 18 (1967) ; see 1 *Larson, supra,* § 19.00 ; Note, 39 *Tenn. L. Rev.* 755 (1972).

In *White v. Frank Z. Sindlinger, supra,* 30 *N. J. Super.* 525 (App. Div. 1954), a workman (White) died as a result of an accident while driving home and his widow sought and was awarded compensation. White had been operating a crane several miles from his employer's shop at Shore Acres and at quitting time he returned to the shop where he did some incidental work and left at about 5 P.M. He had the use of his employer's pickup truck to drive himself and his assistant Mayer home. He and Mayer stopped at a Lakewood inn and had some drinks. There they met a friend and went to a bar where they had more drinks. Mayer then left on foot for his nearby home in Lakewood. He thought he arrived there at about 7 P.M. Thereafter White was found dead in the overturned pickup truck along the route leading to his home in Allenwood. The employer contended that the accident happened at about 8 P.M. and that the intervening drinking and deviation barred any workmen's compensation award. In rejecting this contention, the Appellate Division, comprised of Judges Clapp, Freund and Schettino, noted that it did not consider the deviation as "unduly extended" and stressed that when White "started on his way home from Lakewood and had the accident he was back in the course of his em-

ployment." 30 *N. J. Super.* at 529–530. In its opinion the Appellate Division made the following comments which have particular pertinence here:

> There is no argument that had decedent been killed on the very same road in an accident while on his way home directly from work in the truck which the employer had provided for his and his co-employees' transportation, there would be a compensable accident arising out of and in the course of the employment. *Micieli v. Erie Railroad Co.*, 130 N. J. L. 448, 452 (*Sup. Ct.* 1943). Appellant admits the general rule but claims it does not apply here because there was an abandonment of the employment as a matter of time on the occasion of the fatal occurrence. Assuming there was a deviation in point of time, there is no question that such deviation had terminated, because decedent was on the road home when his death took place, proceeding along the usual route leading from the place where he customarily left Mayer, in Lakewood, to the Allenwood residence. *Rachels v. Pepoon*, 5 *N. J. Misc.* 122, 123 (*Sup. Ct.* 1927), affirmed on the opinion below, 104 N. J. L. 183 (E. & A. 1927); *Beem v. H. D. Lee Mercantile Co.*, 337 Mo. 114, 85 S. W. 2d 441, 100 A. L. R. 1044 (*Sup. Ct.* 1935); *Webb v. North Side Amusement Co.*, 298 *Pa.* 58, 147 A. 846 (*Sup. Ct.* 1929); 7 *Schneider, Workmen's Compensation* (1950), *p.* 403, *sec.* 1684.
>
> The cases cited by appellant are distinguishable because they deal with situations where the accident took place during the course of the deviation and the employee was on his personal mission, or where the injury did not arise out of a danger incident to the employment. 7 *Schneider, Workmen's Compensation* (1950), *p.* 4. *sec.* 1617. 30 *N. J. Super.* at 528–529.

In *Robinson v. Federal Telephone & Radio Corp., supra,* 44 *N. J. Super.* 294, the employee Robinson, along with a coemployee, were on their way to the employer's plant in Mississippi. They arrived at their motel in Maryland, left it for dinner and a movie, and then stopped at a tavern for some beers. Thereafter they got in their car and started back to the motel. On the way they had an accident with resulting injuries for which Robinson sought and was awarded compensation. In sustaining the award the Appellate Division, through Justice (then Judge) Francis, stated that "If the visit to the movie and the tavern constituted a deviation from employment (a point which we need not decide), it ended when they headed for home. *Cf. White*

*v. Frank Z. Sindlinger,* 30 *N. J. Super.* 525 (App. Div. 1954); 1 *Larson, Workmen's Compensation,* § 19.25 (1956)." 44 *N. J. Super.* at 297.

In *Green v. Bell Cleaners, supra,* 65 *N. J. Super.* 311, *aff'd,* 35 *N. J.* 596, the employees White and Green were held entitled to compensation awards for injuries sustained while they were driving a co-employee to his home. White was authorized to drive his employer's truck to his home in Yardley, Pa., and was authorized to drop off his co-employee Green at his home in Trenton. On a Saturday afternoon, at about 3:20 P.M., White was on his way home when he saw another co-employee, Lomax, walking along the road. Lomax had missed his bus and White undertook to drive him to his home in Browns Mills which was about four or five miles distant in a direction opposite from White's ordinary course home. On the way White and the others stopped at a liquor store and did some drinking. After they had resumed their trip toward Browns Mills they had an accident at about 4:55 P.M. The injuries suffered by White and Green in this accident were the basis of their compensation claims which the Appellate Division upheld. In the course of his opinion Judge Kilkenny said:

> On appeal, however, the respondent urges that the drinking episode furnished proof of petitioners' abandonment of their employment status even though the evidence was insufficient to support the statutory defense of intoxication. Such an approach has been generally criticized. See *Olivera v. Hatco Chemical Co.,* 55 *N. J. Super.* 336 (*App. Div.* 1959), certification denied 30 N. J. 557 (1959); and *Secor v. Penn Service Garage,* 19 N. J. 315, 324 (1955). If the drinking interval was, as claimed, in itself an abandonment of employment, the abandonment had terminated when the journey was resumed. *White v. Frank Z. Sindlinger, Inc.,* 30 *N. J. Super.* 525 (*App. Div.* 1954). The accident did not occur during the stop for the whiskey or while it was being consumed. The proofs were insufficient to show that any drinking was solely causative of White's injuries in the subsequent accident. 65 *N. J. Super.* at 316.

The opinions in the cited cases fairly implement the broad legislative design to place the financial burdens of work-connected injuries on the employer rather than the

employee. See *Hornyak v. The Great Atlantic & Pacific Tea Company,* 63 *N. J.* 99 (1973). As this Court noted in *Ricciardi v. Damar Products Co.,* 45 *N. J.* 54, 61 (1965): "travel to and from the place of work quite obviously is essential to the work itself", and where the travel is in the employer's car, or comparably at his expense, it is regularly considered to be compensably work-connected. *Hammond v. The Great Atlantic & Pacific Tea Co., supra,* 56 *N. J.* at 11; *Filson v. Bell Tel. Labs., Inc., supra,* 82 *N. J. Super.* at 191; *Rubeo v. Arthur McMullen Co., supra,* 117 *N. J. L.* at 578–579. During the course of his travel the employee may deviate for personal purposes unrelated to his work and thus remove himself from compensation coverage during the continuance of the deviation. But ordinarily the deviation will not embody any intent to abandon the work-connected travel home and when the deviation is terminated and the travel home is resumed the coverage will resume. Thus in *Sindlinger* (30 *N. J. Super.* 525), *Robinson* (44 *N. J. Super.* 294) and *Green* (65 *N. J. Super.* 311, 35 *N. J.* 596) the coverage was properly found to have resumed after such deviations as had occurred had been terminated.

In *Gentry v. Lilly Co., supra,* 476 *S. W.* 2d 252, Ralph Gentry was a service man who had, at 6:30 P.M., finished his last job at a customer's place of business. He had about an hour's drive to his home in his employer's truck. The testimony was obscure as to Gentry's later activities but he evidently did some drinking and was on his route home about 7 hours later when he was killed in an accident at 1:20 A.M. The court found that intoxication had not been established and that the accidental death had arisen out of and in the course of the employment. In its opinion directing the allowance of compensation, the Tennessee Supreme Court said: "Assuming a deviation — and we do not know the facts — Gentry was on the way home, following the usual and best route, and driving the company truck, when the

collision occurred. If he had deviated he at some time had resumed his duty and was on the way home with the truck in performance of his duty. We conclude that for whatever reason the journey home may have been interrupted, there did not exist at the time of the fatal collision a deviation or departure from Ralph Gentry's employment." 476 *S. W. 2d* at 255. See also *Mohawk Rubber Co. v. Claimants in Death of Cribbs, supra,* 165 *Colo.* 526, 440 *P. 2d* 785: "If the deceased was on his way home at the time of his death he was still within his course of employment even if there had been a deviation from such course of employment earlier in the evening." 165 *Colo.* at 530, 440 *P. 2d* at 787. *Cf. Sedlack v. J. & A. Custom Heating & Air Cond., Inc., supra,* 32 *A. D. 2d* 1020, 301 *N. Y. S. 2d* at 1003–1004; *LoMonico v. Coca Cola Bottling Co. of N. Y., supra,* 28 *A. D. 2d* at 1054, 284 *N. Y. S. 2d* at 18.

In *Wyoming State Treasurer ex rel. Work. Comp. Div. v. Boston, supra,* 445 *P. 2d* 548, several students were employed by the University of Wyoming to assist in a highway research project between Midwest and Kaycee, Wyoming. Transportation was furnished by the University and the students were housed at Casper. They quit work at 5:30 P.M., drove to Midwest which was on the way to Casper, ate dinner, drank some beer and played the bowling machines until 10:30 P.M. They then drove to Kaycee which was in the opposite direction from Casper, had some more beer and played another bowling machine. They left Kaycee at about 1 A.M., passed through Midwest, and while driving towards Casper were in an accident at 2 A.M. In sustaining compensation awards to the students the Wyoming Supreme Court said:

Courts have often applied the rule that, when an employee is covered by a compensation act, an unauthorized side trip for personal reasons usually precludes a recovery for an injury during the side trip. However, when the diversionary trip is completed and the employee has returned to his original route, he is again covered by the act; and, if injured after resuming his authorized travel, he may

recover. Sherrill & LaFollette v. Herring, 78 Ariz. 332, 279 P. 2d 907, 909–910; West Tennessee Nix-A-Mite Systems, Inc. v. Funderburk, 208 Tenn. 381, 346 S. W. 2d 250, 253. See also 58 Am. Jur., Workmen's Compensation, § 227, p. 734; and 1 Larson's Workmen's Compensation Law, §§ 19.31 and 19.32, pp. 294.72–294.74.

We are not prepared to subscribe to this rule for all circumstances There may be circumstances in some cases which would make it necessary to say as a matter of law that there was a complete abandonment of the employment relationship. But we do say, under the circumstances in this case, that the side trip from Midwest to Kaycee and back again to Midwest, lasting approximately three hours at nighttime when further work was not expected, would not require the trier as a matter of law to infer that the employees had abandoned their employment. See Sherrill & LaFollette v. Herring, 78 Ariz. 332, 279 P. 2d 907, 910. 445 P. 2d at 550.

■ In the case at hand the triers of fact in both the Division of Workmen's Compensation and the County Court found that there had been no abandonment and that the accident had occurred while the decedent, whose travel expenses were being paid by his employer, was on his way home from work along a proper and permissible route. Surely the decedent had no intent to abandon his trip home and though there had been a deviation with some drinking there was no finding of intoxication. In its disagreement with the lower tribunals the Appellate Division evidently entertained the view that the length of the deviation in its attendant circumstances amounted, as a matter of law, to such "a departure from the decedent's reasonable sphere of employment" as to bar an award. We find no sufficient basis for its position. This was not a case in which the decedent had gone off to some distant area intending to abandon his trip home. He was en route home and had stopped at Schillig's to eat and drink. While his stay there was rather extended, perhaps approaching 10 hours, he was at all times on his way toward home and had actually resumed his travel toward home before the accident. There is nothing in the compensation law which fixes an arbitrary limit to the number of hours of deviation which may be terminated with travel coverage resumed. Thus if the decedent ate dinner at Schillig's en route

home and stayed there simply watching television for hours before continuing on his intended travel home, there clearly would be no rational basis for failing to apply the broad remedial principles embraced in *Sindlinger* (30 *N. J. Super.* 525), *Robinson* (44 *N. J. Super.* 294) and *Green* (65 *N. J. Super.* 311, 35 *N. J.* 596). While the fact that he also did some drinking there may have influenced the Appellate Division's negative result, the drinking really has no legal bearing here since there was no proof that the accident or death resulted from intoxication. See *N. J. S. A.* 34:15–7; *cf. Green v. Bell Cleaners, supra,* 65 *N. J. Super.* at 316; *Olivera v. Hatco Chemical Co.,* 55 *N. J. Super.* 336, 350 (*App. Div.*), *certif. denied,* 30 *N. J.* 557 (1959).

Reversed.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR and MOUNTAIN, and Judges CONFORD and COLLESTER—6.

*For affirmance*—Justice SULLIVAN—1.